**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | **PRISONER** |
| **SCOTT T. LEWIS,** | : | **CASE NO. 3:03CV196(RNC)** |
| *Petitioner* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COMMISSIONER OF CORRECTION,** | : | **OCTOBER 27, 2006** |
| *Respondent* | : | |

**SUPPLEMENTAL MEMORANDUM OF LAW**

This supplemental memorandum is submitted in response to this Court's "Order Regarding Further Briefing" of September 14, 2006 [Doc. # 30].  In that order, the Court noted that further briefing on the procedural default issue would be helpful.

**I.    SUPPLEMENTAL ARGUMENT**

In his petition for writ of habeas corpus, the petitioner claims that: (1) he was denied due process because exculpatory evidence was suppressed; (2) his conviction was based on perjured testimony; and (3) his right to present a defense was violated because a "third-party confession" was not admitted at trial.  For the reasons described below, the petitioner is not entitled to habeas corpus relief.

**A.    The Petitioner's Defaults in State Court Are Sufficiently "Independent and Adequate" to Bar Federal Review of his Claims**

The petitioner has defaulted his claims that (1) he was denied due process because exculpatory evidence was suppressed and (2) his conviction was based on perjured testimony. The state habeas court rejected these claims on their merits and the petitioner appealed.  On appeal, the Connecticut Appellate Court refused to review the petitioner's claims because he failed to: (1) address the issue of the earlier decision to deny him

certification to appeal and (2) provide the court with an adequate record to review his claim. Because the Appellate Court declined to review the petitioner's claims on the grounds that he failed to comply with these procedural rules, he cannot obtain review of his claim in this federal habeas corpus proceeding.

> **1.     The petitioner's failure to file a transcript when claiming that the habeas court's decision was contrary to the evidence deprived the Appellate Court of its ability to meaningfully review his claim**

Before the Connecticut Appellate Court, the petitioner sought to challenge the state habeas court's decision that certain information provided by former Detective Michael Sweeney's in his co-defendant's post-conviction proceeding was not suppressed.  In so doing, the petitioner refused to file a copy of the transcript of the habeas trial which lasted several days.  Thus, the petitioner is not entitled to review of his claims because he defaulted them in state court.  This default occurred when he failed to present the Appellate Court with an adequate record for review–*i.e.,* a transcript that contained all of the evidence presented to the habeas court.

In resolving the petitioner's appeal, the Connecticut Appellate Court explained that "the record before us does not include the transcript of the petitioner's habeas trial. Instead of providing that transcript, the petitioner wrote a letter to this court, stating that 'no transcript is deemed necessary to be ordered.'"  *Lewis v. Commissioner of Correction,* 73 Conn. App. 597, 598, 808 A.2d 1164 (2002).

> "The duty to provide this court with a record adequate for review rests with the appellant. . . .  It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review."  (Citation omitted; internal quotation marks omitted.)  *Fuller v. Commissioner of Correction,* 66 Conn. App. 598, 602, 785 A.2d 1143 (2001);

2

see also Practice Book § 61-10.  "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a [habeas] court."  (Internal quotation marks omitted.)  *State v. Torres,* 60 Conn. App. 562, 571, 761 A.2d 766 (2000), cert. denied, 255 Conn. 925, 767 A.2d 100 (2001).  Under those circumstances, we only can speculate as to the existence of a factual predicate for the habeas court's rulings.  See *Chase Manhattan Bank/City Trust v. AECO Elevator Co.,* 48 Conn. App. 605, 608, 710 A.2d 190 (1998).  "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law."  (Internal quotation marks omitted.)  *State v. Brown,* 256 Conn. 291, 303 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S.Ct. 670, 151 L.Ed.2d 584 (2001).  On the basis of the foregoing reasons, we decline to review further the petitioner's claims.

*Lewis,* 73 Conn. App. at 598-99.

It is well-established that a state prisoner who defaults his federal claim in state court pursuant to an independent and adequate state procedural rule will be denied federal habeas review absent a showing of cause for the default and actual prejudice arising therefrom or that failure to consider the federal claim will result in a fundamental miscarriage of justice.[1]  *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed. 308 (1989); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (where state court refused to review the merits of petitioner's claim because he failed to raise the claim at trial as required under state procedure, federal habeas relief was

---

[1]   The "fundamental miscarriage of justice" exception applies to those cases where "a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *Smith v. Murray,* 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986); *Murray v. Carrier,* 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).

unavailable absent a showing of "cause" and "prejudice").  A procedural default bars federal habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar. . . ." (Citations omitted.)  *Glenn v. Bartlett,* 98 F.3d 721, 724 (2d Cir. 1996).

State procedural rules "are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system."  *Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).  "Ordinarily, violation of 'firmly established and regularly followed' state rules . . .  Will be adequate to foreclose review of a federal claim. . . .  There are, however, *exceptional* cases in which *exorbitant* application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question. . . ." (Citations omitted; emphasis added.)  *Lee v. Kemna,* 534 U.S. 362, 376, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).  The cases that fit into this category, however, are limited.  *Id.* In *Lee v. Kemna,* for example, the procedural default was not adequate where the petitioner brought an oral motion to the trial court that did not comply with all of the requirements found in Missouri's relevant rules of practice.  The Supreme Court noted that the state trial court did not deny the motion because of the defendant's failure to reduce the motion to writing or to comply with other procedural matters.  Only the state appellate court invoked the rule that the motion be in writing and fully comply with the rules of practice.  Under the specific circumstances of that case–the defendant's attorney sought a brief continuance because the defendant's alibi witnesses had inexplicably left the courthouse--the Court described the requirement that the motion be tendered in writing as

"so bizarre as to inject an Alice-in Wonderland quality into the proceedings." *Id.* at 383. In holding that the state appellate court's finding of a default could not prevent federal review, the Supreme Court, in effect, decided that a rule not relied upon by the state trial court *and* that would not change the outcome of the trial court's decision *and* that places form over substance may not be "adequate" in certain cases to prevent federal review. In deciding that the state default did not bar federal review, however, the Supreme Court explained that "we chart no new course." *Id.* at 385.

Nevertheless, in response to *Lee v. Kemna,* the U.S. Court of Appeals for the Second Circuit identified three "guideposts" to be used when determining whether a state default fits within the "limited category" recognized in *Lee v. Kemna. See Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir. 2003). In other words, whether the default is adequate to prevent federal review. A claimed procedural bar is adequate only if state courts have applied the rule 'evenhandedly to all similar claims.' . . ." (Citation omitted.) *Monroe v. Kuhlman,* 433 F.3d 236, 241 (2d Cir. 2006). "In other words, [a] procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question." *Id.* In "determining whether application of the procedural rule is firmly established and regularly followed, [a court] must examine: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied" with the rule given the realities of trial and, therefore whether demanding perfect

compliance with the rule would serve a legitimate governmental interest." *Monroe,* 433 F.3d at 242.

The problem with this framework becomes apparent when attempting to apply it in the instant circumstances which involve a default in the presentation of claims *on appeal.* The trial court heard evidence over several days before rendering its decision. Most of that evidence, however, was not presented to the Connecticut Appellate Court. Thus, that Court was unable to determine whether the habeas court's decision was supported by the evidence. As a result, there was no possibility that the court could engage in a meaningful review of the petitioner's claims.

Under Connecticut law, the appellant is responsible for providing the court with an adequate record for review. Connecticut's Practice Book § 61-10 provides that "[i]t is the responsibility of the appellant to provide an adequate record for review. That appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this second, the term 'record' . . . includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety." The failure to provide an adequate record will result in the reviewing court's refusal to reach the merits of the claim. *See State v. Duteau,* 68 Conn. App. 248, 251-54, 791 A.2d 591 (2002) (refusal to review claim because no motion for articulation, no motion to compel, *and no transcript* was filed by the appellant); *Gipson v. Commissioner of Correction,* 67 Conn. App. 428, 434-35, 787 A.2d 560 (2001) (refusal to review claim because no motion for articulation was filed by appellant); *State v. Talton,* 63 Conn. App. 851, 861, 779 A.2d 166 (2001) (refusal to review

claim because record was inadequate); *Strobel v. Strobel,* 64 Conn. App. 614, 620-22, 781 A.2d 356 (2001) (same); *State v. Bronson,* 55 Conn. App. 717, 746-47, 740 A.2d 458 (1999) (same).

The instant petitioner sought to appeal the habeas court's determination that no evidence was suppressed.  Essentially, he argued that the habeas court's finding that the information was not suppressed was contrary to the evidence.  *See* Appendix H at 1 (petitioner's states his claim to be "[w]hether the habeas court abused its discretion in ruling that former Detective Michael Sweeney's testimony . . . was not suppressed. . .") and 4 (the "habeas court's findings' that these facts were available is unsupported by the evidence and constitutes error") and 7 (the habeas court's findings that the "exculpatory evidence was furnished to the defense is unsupported by the evidence. . . .").  He failed to provide an adequate record, however, because he did not file transcripts of the multi-day state habeas trial.

In Connecticut's appellate courts, the "validity of any claim that the trial court's decision is not supported by the evidence may be tested only by reference to the record together with the transcripts and exhibits filed in the case. . . ."  (Citation omitted.) *McGaffin v. Roberts,* 193 Conn. 393, 409, 479 A.2d 176 (1984) (court refused to review claim where no transcript had been filed); *Calo-Turner v. Turner,* 83 Conn. App. 53, 56, 847 A.2d 1085 (2004) (court refused to review claim where defendant only provided court with excerpts of his testimony and failed to file complete trial transcript); *Pleines v. Franklin Construction Company, Inc.,* 30 Conn. App. 612, 615, 621 A.2d 759 (1993); *In re Lea T.,* 15 Conn. App. 455, 457, 544 A.2d 1245 (1988) (where appellant only filed transcripts of

three of the seven witnesses presented, appellate court could not review a claim that the lower court's decision was not supported by the evidence).  Under Connecticut law, a claim of error cannot be predicated on an *assumption* that the trial court acted incorrectly.  *In re Lea T.,* 15 Conn. App. at 458.  Thus, when an appellant chooses not to file all necessary transcripts, he does so at his own peril.  For example, in *State v. Spillane,* 255 Conn. 746, 770 A.2d 898 (2001), the defendant sought to challenge the trial court's denial of his motion for judgment of acquittal at the close of the state's case.  Because the defendant chose not to have the testimony of ten witnesses transcribed, the Connecticut Supreme Court refused to review his claim.  In so doing, the court noted that "[a]lthough the defendant argues that the excluded testimony was relevant only to the charges on which he was acquitted, we will not base our conclusions on the defendant's unsubstantiated representations. . . ."  *Id.* at 760.  As in *Spillane*, the Appellate Court refused to rely upon the petitioner's "unsubstantiated representations" when reviewing the habeas court's findings.

This state rule is nearly identical to Rule 10(b)(2) of the Federal Rules of Appellate Procedure which provides that:

> (2)  *Unsupported Finding or Conclusion.*  If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion.

Thus, when an appellant does not provide the necessary transcripts, the U.S. Court of Appeals for the Second Circuit will dismiss his appeal.  *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000) (appeal dismissed with prejudice where appellant's "failure to provide . . . transcripts deprives this Court of the ability to conduct meaningful appellate

8

review"). Other courts will do the same. *See, e.g., Birchler v. Gehl Company,* 88 F.3d 518, 520 (7th Cir. 1996) ("appellate court has no alternative but to dismiss an appeal if the absence of the transcript precludes meaningful review. . . ." [Citations omitted]); *Richardson v. Henry,* 902 F.2d 414, 416 (5th Cir. 1990) (where appellant in § 1983 action sought review of district court's factual findings, failure to provide transcript warranted dismissal of that claim); *Southwest Administrators, Inc. v. Lopez,* 781 F.2d 1378, 1380 (9th Cir. 1986) (failure of appellant to file transcripts deprived court of the ability to review mixed question of law and fact; appeal dismissed); *Brattrud v. Town of Exline,* 628 F.2d 1098, 1099 (8th Cir. 1980) (challenge to verdict as contrary to the evidence will be dismissed where failure to file transcript precluded meaningful review).

Here, the petitioner's default occurred at the appellate level and not at the trial level. The petitioner claimed that information contained in Sweeney's testimony at his co-defendant's post-conviction hearing was suppressed. After a multiple-day trial, however, the habeas court found that the "claim of the petitioner that exculpatory information was not provided to the defense prior to the trial in 1995, has not been proven. This court finds not only was all exculpatory evidence furnished to the defense, but also the alleged evidence was available by due diligence to the defense. . . ." Appendix G at 47. In his brief to the Connecticut Appellate Court, the petitioner argued that the "habeas court's findings that the information Sweeney possessed was available to defense at or prior to trial, and that the exculpatory information was furnished to the defendant is unsupported by the evidence and the state's admissions in its brief filed August 30, 1991." Appendix H at 7. Apparently, the information that the petitioner considers to be "undisclosed"

concerns an interview that former detectives Michael J. Sweeney and Vincent M. Raucci conducted with a witness named Orville Ruiz on January 13-14, 1991.

The petitioner sought to challenge the state habeas court's finding by presenting the Appellate Court with four exhibits that were entered during a habeas trial that spanned several days.[2]  Apparently, those exhibits were the criminal trial testimony of Ovil Ruiz and a transcript of the testimony that a former police officer named Michael Sweeney gave in the co-defendant's post-trial proceeding.  Unless all of the evidence available to the state habeas court was available to the Connecticut Appellate Court, however, review of the habeas court's finding that the information was "furnished to the defense" would be impossible.  The petitioner *asserts* that only these four exhibits were relevant.  *See* Petitioner's memorandum [Doc. # 18] at 7 ("There was <u>no</u> other evidence adduced at the state habeas court that was relevant to the issues on appeal; therefore, those portions of the habeas transcript were not relevant to the appeal . . . .").  He must do more make an assertion regarding the state of the evidence before the habeas court.  He must *prove* that the findings of the state habeas court were incorrect.  Before the petitioner filed his transcript certification; Appendix I at A-4; the Connecticut Supreme Court had refused to rely upon an appellant's "unsubstantiated representations" when reviewing a trial court's findings in a reported decision released on April 24, 2001 in *State v. Spillane,* 255 Conn. 746, 770 A.2d 898 (2001).  By deliberately choosing not to file the transcripts of the state habeas trial, the petitioner was able to select the evidence most favorable to him.  He then

---

[2]    The hearing or trial before the state habeas court "commenced on June 20, 2001, continued on five additional dates and ended on August 2, 2001."  Appendix I at 2.

asked the Appellate Court to rely solely on his chosen exhibits to overrule a lower court's findings.

Additionally, the petitioner's assertion that no procedural default occurred (because only the transcript Ruiz's criminal trial testimony and the transcript of the post-trial testimony of Sweeney were relevant to his claim) necessarily assumes that counsel would have asked Ruiz about every detail provided by Sweeney.  In essence, he theorizes that if counsel did not ask a particular question on cross-examination it is because he was not given certain information by the state.  One reason why this theory is faulty is that attorneys have discretion in deciding how to cross-examine a state's witness.  Indeed, there always will be some evidence that, although technically considered impeachment or exculpatory, is best not presented.  In other words, some evidence can be characterized as a "double-edged sword."  For example, the state discloses that a murder victim assaulted the defendant a month before being shot. Certainly, this evidence could help advance a self-defense claim but it also provides a motive for the killing.  Counsel would have to look at all of the evidence and make a strategic decision before offering such information to the jury.  Given this flaw in the instant petitioner's theory, his assumption that evidence not contained in Ruiz's trial testimony was not disclosed by the state is flawed.  As a result, his contention that only four exhibits were necessary to resolve his *Brady* claim is unsupported and his claim was not reviewable by the Connecticut Appellate Court.

In looking at a procedural default, this Court does not review the correctness of the state court's decision.  That is a matter of state law.  Rather, given the decision of the state court, the federal court reviews whether the default is *adequate* to prevent federal review

of this claim.  Here, "perfect compliance with the state rule would have changed the [Appellate Court's] decision"; *Monroe,* 433 F.3d at 242; because that court would have been able to review the merits of the claims challenging the habeas court's decision. Likewise, as shown above, "state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented." *Id.* at 242.  Finally, the petitioner did not "substantially comply" with the rule that the appellant is responsible for providing the appellate court with an adequate record.  Under these circumstances, "perfect compliance with the rule [serves] a legitimate governmental interest." *Id.* at 242.  This is because an appellate court cannot review the type of claim raised by the petitioner–*i.e,* that the court's findings or conclusions were not supported by the evidence--absent an adequate record. Without an adequate record, an appellate court is left to speculate as to the existence of evidence supporting the lower court's decision.  In other words, the lack of an adequate record impairs or destroys an appellate court's ability to accurately resolve a claim and, thus, hinders its ability to do justice.  Federal appellate courts refuse to review claims similar to the petitioner's when the necessary transcripts are not provided.  Obviously, to hold that a state appellate court cannot do the same would demonstrate disrespect for the state court system and violate principles of comity.

Given the above, the petitioner's default in state court pursuant to an independent and adequate state procedural rule must result in the denial federal habeas review unless the petitioner can show good cause for the default and actual prejudice arising therefrom or that a failure to consider the claim will result in a fundamental miscarriage of justice.  For this reason, the petitioner's first claim must be denied without a review of its merits.

**B.    The Petitioner Has Not Exhausted All of His Claims That Exculpatory Evidence Was Suppressed**

As his first ground for relief, the petitioner claims that the state suppressed certain exculpatory evidence.  He specifically asserts that the following information was withheld:

1.    "The state objected to and suppressed from the defense information in a police report dated December 20, 1990 concerning its material witness, Orvil Ruiz, assault arrest and conviction";

2.    "The said Police Report of December 20, 1990, revealed that the State's key witness, Ovil Ruiz, supplied police with false information pertaining to a shooting investigation.  Moreover, Ovil Ruiz attempted to 'blame someone other than himself' for something he actually did";

3.    The suppression of the Shaw report: concerning, Ovil Ruiz, providing untrustworthy information *two days after* the homicide; in which, the petitioner was convicted, was impeachment evidence and should have been disclosed prior to the petitioner's criminal trial";

4.    "The information indicates 'police *knew* Ruiz to be an untrustworthy person'; prior to him being questioned about the Turner and Fields homicides, in which the petitioner stands convicted.

(Emphasis in original.)  Petition [Doc. # 1] at Count One.

None of these allegations have been presented to the appellate courts of Connecticut.  Rather, on appeal to the Connecticut Appellate Court, the petitioner only pursued a claim that Detective Michael Sweeney obtained exculpatory information during an interview of Ovil Ruiz on January 13-14, 1991 and that such exculpatory information was not disclosed.  *See* Appendices H and J.  Likewise, the petitioner did not raise any claim regarding these other matters in his petition seeking discretionary review by the Connecticut Supreme Court.  Appendix K.

13

Federal habeas corpus relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).  Indeed, even if a petitioner can demonstrate a "clear violation" of his rights, federal relief is unwarranted unless available state remedies are exhausted. *Duckworth v. Serrano,* 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam).  This "exhaustion requirement springs primarily from considerations of comity." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir. 1982).  It requires that federal courts refrain from exercising "habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law" and, thus, demonstrates "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Id.*  A claim is not "exhausted" unless it has been presented to the highest state court.  *Daye*, 696 F.2d at 190 n.3.

Here, only the petitioner's *Brady* claim regarding Sweeney's information has been raised to the Connecticut Appellate Court and the Connecticut Supreme Court.  None of the others that he raises in his petition have been presented to those courts.  As a result, the petitioner has failed to exhaust his state court remedies with respect to these allegations and Federal review is not available.

### C.    The Petitioner Cannot Obtain Habeas Corpus Relief On His Claim That His Conviction Was Based On Perjured Testimony

As his second ground for relief, the petitioner claims that his conviction was based on perjured testimony.  This claim also is not reviewable.  At the same time that the Appellate Court refused to review the petitioner's claim described in Section III.A., above, it declined to review this claim on the ground that the petitioner failed to comply with the

14

court's procedural rules.  Therefore, he cannot obtain review of this claim in this federal habeas corpus proceeding.

The petitioner asserts that Ovil Ruiz was interviewed by agents of the Federal Bureau of Investigation (FBI) on February 22, 1996 and that Ruiz "stated . . . that he had lied under oath at the Petitioner's Criminal Trial and that the Petitioner had nothing to do with the crimes in which the Petitioner stands convicted."  Petition [Doc. # 1] at Count Two. After a trial on the merits of the petitioner's claims, the state habeas court determined that the petitioner had failed to demonstrate that one of the state's witnesses, Ovil Ruiz, testified falsely at the petitioner's 1995 trial, as follows:

> The first count alleges that Ovil Ruiz committed perjury at the criminal trial when the petitioner was convicted of two counts of murder and felony murder on May 10, 1995.  Ovil Ruiz testified under oath at that trial.  On February 22, 1996, the petitioner alleges Ovil Ruiz stated to the F.B.I. that he had lied at the trial and the petitioner had nothing to do with the crimes for which the petitioner was convicted.
>
> The evidence in this case has established that October 11, 1990, in the early hours of the morning, Ricardo Turner and Edward Lamont Fields were shot dead.    The killings occurred at 634 Howard Avenue, New Haven, Connecticut.  The petitioner and Stefon Morant were arrested and charged with two counts of murder and two counts of felony murder.  On January 13, 1991, Ovil Ruiz was arrested and brought to the Detective Division for questioning.  The statement from Ruiz was tape recorded on January 14, 1991.  In that statement Ruiz states he had sold drugs for the petitioner and Morant for two years.  Ruiz said he over heard a discussion between Morant and the petitioner that the petitioner shot two guys who tried to run away with my money and my drugs.  Ruiz later saw the petitioner throw the murder weapon into the water near the Chapel Street bridge.
>
> Ruiz then remained in custody until March 19, 1991, when he was released. On April 11, 1991, he was rearrested and convicted thereafter on larceny and narcotics charges.  On May 28, 1991, Ruiz tape recorded and signed a statement in the office of the State's Attorney in the presence of his attorney, David Gold and Detective Raucci.  In that statement he stated he obtained guns for the petitioner and Morant and drove them to the scene of the crime

where the petitioner and Morant went into the house.  He then heard shots and saw the petitioner come out with a bag of money, and Morant with a Puma bag containing drugs.

At the trial of the petitioner, Ruiz was presented as a state's witness.  He was extensively questioned by the attorney for the petitioner while he was under oath.  He testified he was in danger in the general prison population because of his cooperation with the police and the state's attorney in the prosecution of the petitioner.  Ruiz was a key witness for the state, and the petitioner raised questions as to his mental health both at the trial and in the appeal to the Supreme Court.

On February 22, 1996, Ruiz while in prison gave a statement to the F.B.I. He then stated that Detective Raucci, who had recently been suspended and arrested by the New Haven Police Department, was involved with drug dealers named Armando and Raul Luciano, Frank Parese and a Colombian named "Loco."  He stated they killed the victims not the petitioner and Morant.  Ruiz said he was used to "set up" the petitioner by Detective Raucci and Parese's drug distribution operation.

On October 24, 1996, Ruiz gave a different statement to the F.B.I. that he had killed Edward Lamont Fields when he fired shots into his chest with a .357 caliber revolver, and Raul shot Turner with a .38 caliber revolver.  At the petitioner's trial the physical evidence established both victims were murdered by a .347 caliber weapon, and they both were shot in the back.

On February 16, 1997, Ruiz gave a final statement to the F.B.I. that he was pressured to lie to the F.B.I. and the statement he gave regarding Detective Raucci and State's Attorney Gold was false.  Ruiz then stated the testimony he had given at the trial of the petitioner in 1995, was the truth.

At the hearing on this habeas petition the petitioner presented Ovil Ruiz as a witness.  Ruiz then invoked his constitutional privilege against self-incrimination and he refused to testify based upon his exposure to murder and perhaps perjury charges for his involvement in the murders.

The claim of the petitioner that Ovil Ruiz had testified falsely at the criminal trial of the petitioner has not been proven.  False testimony may only be the basis of a new trial when: "(a) the court is reasonable well satisfied that the testimony given by a material witness is false; (b) that without it the jury might have reached a different conclusion; (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it. . . ."  Prudlik v. State, 131 Conn. 682, 687 (1945); Talton v. Warden, 33 Conn. App. 171, 177 (1993).

The petitioner has filed a post trial brief which discussed the statement taken from Ovil Ruiz on January 14, 1991. He argues that Detective Sergeant Sweeney was critical of Detective Raucci. He contends Detective Raucci therefore, conveyed false or misleading information to Ruiz. Detective Sweeney's testimony at the trial of Morant disclosed that the information provided by Detective Raucci was insignificant and did not disclose the names of the petitioner or Morant. It also did not reveal numerous other significant facts which were disclosed by Ovil Ruiz in his statements as well as his testimony at the trial of the petitioner. The statements obtained from Ruiz on January 14, 1991, and May 28, 1991, were available to the petitioner at the time of his trial. The evidence relating to those statements was known or available at the time of trial and it is not now newly discovered evidence. "Newly discovered evidence must consist of facts which were unknown at the time of trial, and it must appear [that] the defendant or defense counsel could not have known those facts by the use of [due] diligence." Coleman v. State, 718 So.2d 827, 829 (Fla.App.1998). "Due diligence means doing everything reasonable. . . ." Williams v. Commission, 41 Conn. App. 515, 528 (1996).

The argument of the petitioner in his brief that Detective Sweeney had evidence of Ruiz's untruthfulness in his statements in 1991, has not been proven by the petitioner. This court is not persuaded that Detective Sweeney's knowledge constituted new evidence that would probably result in a different verdict at a new trial, or that an injustice has been done. Lombardo v. State, 172 Conn. at 391 citing Prodlik v. State, 131 Conn. 686.

The petitioner has failed to sustain the burden of proving the claims made in the first count. Lubesky v. Bronson, 213 Conn. 97, 110 (1989). Ruiz has not testified in this habeas proceeding. His testimony in the trial of the petitioner was credible because it was under oath and subject to cross examination by the attorney for the petitioner. The testimony was also consistent with other credible evidence including Morant's confession to his involvement with the petitioner. The statements given to the F.B.I. in 1996, by Ruiz while he was incarcerated, were given under circumstances that are unlikely to be reliable. Smith v. State, 139 Conn. 249, 252-53 (1952). The 1996 recantations were not credible, and therefore, the petitioner has failed to prove Ruiz testified falsely in 1995.

Appendix G at 41-45.

The U.S. Supreme Court has held that "a conviction must be set aside if (1) 'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' *United*

States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)." *Drake v. Portuondo,* 321 F.3d 338, 345 (2d Cir. 2003).

Ovil Ruiz testified as a state's witness.  At the petitioner's criminal trial, Ruiz "was extensively questioned by the attorney for the petitioner while he was under oath.  He testified he was in danger in the general prison population because of his cooperation with the police and the state's attorney in the prosecution of the petitioner."  Appendix G at 42.  Additionally, "the petitioner raised questions as to his mental health both at the trial and in the appeal to the Supreme Court."  Appendix G at 43.  The petitioner was sentenced on July 21, 1995.

Ruiz apparently recanted to the FBI on February 22, 1996.  At that time, Ruiz again was incarcerated.  Under Connecticut law, recanted testimony always has been viewed with suspicion:

> "Recantation as grounds for a new trial has always been viewed with skepticism.  Well over a hundred years ago, our Supreme Court enunciated this skepticism in *Shields v. State,* 45 Conn. 266, 270 (1877), as follows: 'After the trial is over and the accused stands convicted, with the heavy penalty of the law impending and just ready to fall upon him, how easy by artful or even honest suggestion to awaken a sympathy even in the heart of the victim, who was the main, perhaps only witness against the accused, and who naturally feels responsible for the conviction; and how easy for such witness by a process of speculation, colored by feeling, to feel and express a doubt about the correctness of the opinion entertained at the time of the transaction.'"

*Channer v. State,* 54 Conn. App. 620, 629-30 (1999), *quoting, Johnson v. State,* 36 Conn. App. 59, 69 (1994).

Connecticut is not alone.  Recanted testimony is universally viewed with extreme skepticism.  *See United States v. Gresham,* 118 F.3d 258, 267 (5th Cir. 1997) ("We have

often observed . . . that 'recanting affidavits and witnesses are viewed with extreme suspicion by the courts.' . . ." [Citation omitted]); *U.S. ex rel. Sostre v. Festa,* 513 F.2d 1313, 1318 (2d Cir. 1975) ("traditionally, the recantation of testimony given on trial is looked upon with the utmost suspicion. . . ." [Citations omitted; quotation marks omitted.]); *M.T., Sr. v. State,* 677 So.2d 1223, 1230-31 (Ala. Crim. App. 1995) ("recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true" [Citations omitted]); *State v. Krum,* 183 Ariz. 288, 294, 903 P.2d 596 (1995) (en banc) ("Courts have long been skeptical of recanted testimony claims. . ."); *People v. Schneider,* 25 P.3d 755, 763 (Colo. 2001) ("Courts generally view a witness's recantation of prior trial testimony with great suspicion") (collecting cases); *Brown v. State,* 816 P.2d 818, 822 (Wyo. 1991) ("recanted testimony is viewed with the utmost suspicion"). Indeed, the Arizona Supreme Court has explained that "[t]here is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character. . . ." *Krum*, 183 Ariz. at 294.

Here, the state habeas court agreed that Ruiz's recantation was untrustworthy. In so doing, it noted that "Ruiz has not testified in this habeas proceeding. His testimony in the trial of the petitioner was credible because it was under oath and subject to cross examination by the attorney for the petitioner." Appendix G at 45. It also determined that Ruiz's trial "testimony was also consistent with other credible evidence including Morant's confession to his involvement with the petitioner." Appendix G at 45. Finally, the state habeas court found that Ruiz's statements "to the F.B.I. in 1996 . . . while he was

19

incarcerated, were given under circumstances that are unlikely to be reliable." *Id.* at 45. As a result, the "1996 recantations were not credible, and therefore, the petitioner has failed to prove Ruiz testified falsely in 1995." *Id.* at 45.

Because the Connecticut Appellate Court was not provided with an adequate record of the proceedings before the state habeas court, it could not properly review a complex issue such as the recantation of sworn trial testimony. Indeed, it should be noted that Ovil Ruiz has *never* recanted before any court. All of his recantations were made in out-of-court statements. He refused to testify at the post-trial proceedings of the petitioner and his co-defendant, Stefon Morant. *See Morant v. State,* 63 Conn. App. 137, 154, 802 A.2d 93 (2002). Both the court hearing the petitioner's post-conviction petition *and* the court hearing Morant's, found the out-of-court statements of Ruiz to be incredible.[3]

Given the petitioner's procedural default in not providing an adequate record to the Appellate Court and the factual findings of the state courts that the recantations were incredible, the petitioner's claim is not reviewable. Therefore, both review and relief must be denied.

## IV.  CONCLUSION

For the reasons discussed above, the petitioner is not entitled to federal habeas corpus relief on the first two claims raised in his petition.

---

[3]    The petitioner's habeas petition was tried before Judge Howard F. Zoarski and Morant's petitions for a new trial were heard by Judges William L. Hadden, Jr. and Jon C. Blue.

Respectfully submitted,

RESPONDENT--COMMISSIONER OF CORRECTION

By: _____/s/_____
JO ANNE SULIK
Senior Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (fax)
Fed. Bar. No. ct 15122

## **CERTIFICATION**

I hereby certify that a copy of this memorandum was mailed to Scott T. Lewis, # 13768, MacDougall Correctional Institution, 1153 East Street South, Suffield, Connecticut 06080, on October 27, 2006.

_____/s/_____
JO ANNE SULIK
Senior Assistant State's Attorney