# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

```
_____x
SCOTT TALMADJE LEWIS,                   )
                                        )
                    Petitioner,         )       No. 3:03-cv-00196 (RNC)
          v.                            )
                                        )
COMMISSIONER OF CORRECTION              )
                                        )       December 7, 2009
                    Respondent.         )
_____x
```

## DECLARATION OF LAW STUDENT INTERN SARA EDELSTEIN IN SUPPORT OF PETITIONER'S OPPOSITION TO RESPONDENT'S NUNC PRO TUNC MOTION FOR ENLARGEMENT OF TIME

I, Sara Edelstein, in accordance with 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a third-year law student at the Yale Law School, and a law student intern at the Jerome N. Frank Legal Services Organization, working under the supervision of attorney Brett Dignam and pursuant to District of Connecticut Local Rule of Civil Procedure 83.9.

2.      I am one of the law students participating in the representation of Petitioner Scott Lewis in the above-captioned habeas petition.

3.      Attached hereto as Exhibit A is a true and correct copy of the civil docket for the above-captioned case, which I printed from the Public Access to Court Electronic Records (PACER) website for the United States District Court for the District of Connecticut on December 2, 2009.

4.      The present Motion is Respondent's seventh nunc pro tunc Motion to Extend Time in this matter.  *See* Ex.A, [dkt# 6, 9, 32, 33, 45, 49, 61].

5.      The only timely filing by Respondent in the above-captioned case was its Memorandum in Opposition to Petitioner's Motion for a Physical Examination.  *See* Ex. A, [dkt# 20]

(Petitioner's Motion for Physical Examination) (filed Nov. 14, 2003); [dkt# 21] (Respondent's Memorandum in Opposition) (filed Nov. 26, 2003).

6.      Prior to November 16, 2009, Respondent's untimely filings had cumulatively delayed this matter by two-hundred-sixteen days.[1]  *See* ¶¶ 25, 27, 31, 38 *infra*.

### *Telephone Status Conference of September 16, 2009*

7.      On September 16, 2009, a recorded Telephone Status Conference was held.  The Court and the parties discussed the status of the case.  The Court identified issues left to be resolved.

8.      Attached hereto as Exhibit B is a true and correct copy of an uncertified advance copy of the transcript of the September 16, 2009 Telephone Status Conference. *See* [dkt# 56] (Minute Entry for Telephone Status Conference).  The Court provided this transcript to Attorney Dignam on October 28, 2009 to assist in her decision whether to accept a pro bono appointment to represent the Petitioner pursuant to the Criminal Justice Act.

9.      During the September 16, 2009 Status Conference, the Court indicated that it had reviewed the transcripts of Petitioner's habeas trial in the Superior Court of Connecticut, and noted that Petitioner "explicitly pleaded and argued and litigated" his Brady claim during his Connecticut State habeas proceedings. *See* Ex. B at 1.

10.     Based on this observation, the Court expressed concern that the Respondent's representation on appeal that "the only claim that was presented to or decided by the [Connecticut state] habeas judge was a claim based on newly discovered evidence" appeared to be incorrect.  *See* Ex. B at 2.

---

[1] Of these two-hundred-sixteen days of delay, one-hundred-fifty days are attributable to the delayed receipt of the transcript. *See* ¶ 38, *infra*. It is impossible to ascertain from the pleadings what portion of this one-hundred-fifty-day delay is attributable to counsel.  *See* ¶¶ 35, 37, *infra*.

11.      "[I]n an effort to move the case along," the Court stated that it would "like to set a date for the State's submission of a supplemental brief addressing the issues."  Ex. B at 24.

12.      After summarizing the issues raised in the course of the Conference, to be answered in Respondent's supplemental brief, Ex. B at 24-25,[2] the Court asked counsel for Respondent what a "realistic date for that supplemental brief" would be.  Ex. B at 25.

13.      Counsel for Respondent noted that the current date was September 16, 2009, and stated that she thought sixty days was a "reasonable" amount of time in which to write the brief.  *See* Ex. B at 25-26.  The Court agreed, *see* Ex. B at 26, and ordered Respondent to file the brief by November 16, 2009.  *See* Ex. A, [dkt #56].

14.      During the Status Conference, Petitioner requested that the deadlines for the briefs be "firm dates," noting that "this [matter] has been going on for quite some time now."  *See* Ex. B at 28.

15.      The Court agreed, stating on the record that "[c]ertainly . . . the date for the filing of the State's submission should be viewed" as a firm date.  *Id.*[3]

---

[2] The Court identified the issues to be briefed as  follows:

> . . . I need to know why the record provided to the appellate court was insufficient to permit review of the *Brady* claim and if that insufficiency fairly justifies a procedural bar because the petitioner should have known better.
>
> Again, I would need to know where the State stands with regard to the petitioner's failure to brief the issue whether Justice Katz abused her discretion. Is the State claiming that this itself is sufficient to establish a procedural bar? And if so, why? You know, in what way does this further a legitimate State interest and how would a petitioner know that that failure to brief the issue in those terms would risk dismissal of the appeal even though the very issue was being briefed in substance by the petitioner in seeking relief on the merits?
>
> Going beyond that, I would like to have the State's position on how I should view the habeas trial judge's ruling rejecting the Brady claim. What finding did the State judge make? What rule of law did he apply? And finally, I would like the State to tell me what it thinks I should do[.]

*See* Ex. B at 25.

[3] The full exchange was as follows:

> THE COURT: [. . . .] The State's supplemental brief will be filed and served on November 16, 2009, and the defendant's reply will be due on December 16, 2009.

16.    Respondent did not file a timely brief and did not file its November 30, 2009 Nunc Pro Tunc Motion for an Extension of Time to December 16, 2009, the seventh such motion filed by Respondent in this matter, until two weeks after the "firm" deadline prescribed by this Court. *See* Ex. A, [dkt #61]; Ex. B at 28.

### *Respondent's Untimely Response to Petitioner's Petition for Writ of Habeas Corpus*

17.    Petitioner filed a petition for writ of habeas corpus on January 29, 2003.  Ex. A, [dkt# 1].

18.    Magistrate Judge Fitzsimmons issued an Order to Show Cause, ordering a response by June 10, 2003.  Ex. A, [dkt# 2] (filed April 11, 2003).

19.    Respondent filed an untimely Motion to Extend Time to July 15, 2003, Ex. A, [dkt# 6] (filed June 12, 2003), to which Petitioner objected.  *See* Ex. A, [dkt# 8] (filed June 18, 2003).

20.    Magistrate Judge Donna F. Martinez granted the Motion.  *See* Ex. A, (filed June 30, 2003) (no docket number designated on PACER).

21.    Respondent did not file its Response on the July 15, 2003 deadline.

22.    On July 21, 2003, six days after the deadline, Respondent filed a second untimely Motion to Extend Time to respond to the habeas petition, and requested an extension of time to July 31, 2003.  Ex. A, [dkt# 9] (filed July 21, 2003).

23.    Petitioner objected to this Motion, and moved for entry of default against Respondent. *See* Ex. A, [dkt# 10] (filed July 23, 2003); [dkt# 11] (filed July 25, 2003).

---

MR. LEWIS: One question, Your Honor, I was wondering if these could be firm dates? Not that -- I know these things take a lot of time and you have a lot of cases, as Ms. Sulik, but as you noted earlier, this has been going on for quite some time now. I was wondering if those could be firm dates.

THE COURT: I'm treating them as firm dates. Certainly I think the date for the filing of the State's submission should be viewed that way.

*See* Ex. B at 28.

24.     Magistrate Judge Donna F. Martinez granted Respondent's untimely Motion to Extend Time to July 31, 2003, *See* Ex. A, (filed July 25, 2003) (no docket number designated on PACER), and denied Petitioner's Motion for Entry of Default.  Ex.A, [dkt# 19] (filed Oct. 29, 2003).

25.     Respondent filed its Response on July 31, 2003, fifty-one days later than the original deadline.  *See* Ex. A, [dkt# 14].


### *Respondent's Untimely Response to the Court's Order Regarding Further Briefing*

26.     On September 15, 2006, Judge Robert. N. Chatigny issued an Order Regarding Further Briefing, ordering Respondent to file and serve a supplemental memorandum explaining why "all the elements of a federally cognizable default are fully satisfied" by October 15, 2006.  Ex. A, [dkt# 30] (filed Sept. 15, 2006).

27.     Respondent did not file the supplemental memorandum on the October 15, 2006 deadline.  *See* Ex. A.

28.     On October 20, 2006, Petitioner filed a Motion for Default Entry as to Respondent, Ex.A, [dkt# 31].

29.     On October 23, 2006, eight days after the deadline ordered by Judge Chatigny, Respondent filed a Motion for Extension of Time, nunc pro tunc, until October 27, 2006.  Ex. A, [dkt# 32].

30.     Respondent did not file the supplemental memorandum on October 27, 2006.  *See* Ex. A.

31.     Respondent filed the supplemental memorandum on October 30, 2006. *See* Ex. A, [dkt# 34], accompanied by a Motion for an Extension of Time, nunc pro tunc, *See* Ex.A, [dkt# 33].

***Respondent's Untimely Compliance with the Court's Order Requiring Respondent to File a Complete Transcript of the Habeas Trial***

32.     On September 23, 2008, Judge Robert N. Chatigny ordered Respondent to file a complete transcript of Petitioner's habeas trial in Connecticut Superior Court (Zoarski, J.) on or before November 3, 2008.  Ex. A, [dkt# 41].

33.     More than two weeks after the November 3, 2008 deadline, Respondent had neither filed the transcript nor filed a timely motion for an enlargement of time in which to file the transcript.

34.     On November 18, 2008, Petitioner filed a Motion for Default Judgment. Ex. A, [dkt# 44].

35.     Three days later, the Respondent filed a nunc pro tunc Motion for Extension of time until January 2, 2009.  Ex. A, [dkt# 45] (filed Nov. 21, 2008).  The Motion provided no explanation for Respondent's failure to file a timely Motion for Extension.  The Motion did not indicate the date on which the Respondent first attempted to obtain the transcript.

36.     The Motion was granted, *see* Ex. A, [dkt# 46] (filed Nov. 25, 2008), but Respondent again allowed the deadline to lapse without filing either the transcript or a motion for an enlargement of time.

37.     On February 20, 2009, forty-nine days after the new deadline of January 2, 2009, Respondent filed an untimely Motion for Extension of Time until March 31, 2009.  Ex. A, [dkt# 49].  This Motion was accompanied by a partial transcript.  *See* Ex. A, [dkt# 49].  The Motion provided no explanation for the Respondent's failure to file a request for an extension prior to the January 2, 2009 deadline, nor did it describe any efforts made by Respondent to follow up on its transcript request between November 21, 2008 and January 2, 2009.

38.     Respondent produced the full transcript on March 31, 2009, Ex. A, [dkt# 53], one-hundred-fifty days after the original deadline of November 3, 2008.  *See* Ex. A, [dkt# 41].

6

39.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

> /s/ Sara M. Edelstein
> _____
> Sara M. Edelstein
> Law Student Intern
> The Jerome N. Frank Legal Services Organization
> State of Connecticut
> County of New Haven

Executed on December 7, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2009 a copy of the foregoing declaration and accompanying exhibits was filed electronically. The following counsel will be notified of the filing and will have access to the foregoing via the Court's electronic filing system:

Jo Anne Sulik
Chief State Attorney Office, Civil Litigation Bureau
300 Corporate Place
Rocky Hill, CT 06067

_____/s/ Brett Dignam_____

Brett Dignam, Esq., Federal bar no. ct 00283

Jerome N Frank Legal Services Organization

P.O. Box 209090

New Haven, CT 06520-9090

203-432-4800

# Exhibit A

EFILE, HABEAS

## U.S. District Court
## United States District Court for the District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:03-cv-00196-RNC

Lewis v. Commissioner
Assigned to: Judge Robert N. Chatigny
Demand: $0
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 01/29/2003
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Scott Talmadje Lewis**        represented by   **Brett Dignam**
                                                Jerome N. Frank Legal Services
                                                Organization
                                                Yale Law School
                                                PO Box 209090
                                                New Haven , CT 06520-9090
                                                203-432-4800
                                                Email: brett.dignam@yale.edu
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**Commissioner Of Correction**   represented by   **Carolyn K. Longstreth**
                                                Chief State Attorney Office
                                                300 Corporate Place
                                                Rocky Hill , CT 06067
                                                860-258-5800
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

                                                **Jo Anne Sulik**
                                                Chief State Attorney Office, Civil
                                                Litigation Bureau
                                                300 Corporate Place
                                                Rocky Hill , CT 06067
                                                860-258-5887
                                                Fax: 860-258-5968
                                                Email: JoAnne.Sulik@po.state.ct.us
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/29/2003 | 1 | PETITION for writ of habeas corpus; FILING FEE $ 5.00 RECEIPT # B005516 (Beverly, T.) (Entered: 02/03/2003) |
| 04/11/2003 | 2 | ORDER TO SHOW CAUSE ordering response due 6/10/03 and service by petitioner to be made by 5/10/03 ( Signed by Mag. Judge Holly B. Fitzsimmons ) (Jaiman, R.) (Entered: 04/17/2003) |
| 04/15/2003 | | CASE referred to Mag. Judge Donna F. Martinez (Jaiman, R.) (Entered: 04/17/2003) |
| 04/28/2003 | 3 | NOTICE of proof of service by Scott Talmadje Lewis (Corriette, M.) (Entered: 04/29/2003) |
| 05/05/2003 | 4 | APPEARANCE of Attorney for Commissioner of Correction -- Carolyn K. Longstreth (Corriette, M.) Modified on 3/23/2004 (Corriette, M.). (Entered: 05/07/2003) |
| 06/12/2003 | 5 | APPEARANCE of Attorney for Commissioner -- Jo Anne Sulik (Corriette, M.) (Entered: 06/13/2003) |
| 06/12/2003 | 6 | MOTION by Commissioner to Extend Time to 7/15/03 to Respond (Corriette, M.) (Entered: 06/13/2003) |
| 06/13/2003 | 7 | MOTION by Scott Talmadje Lewis for Default Judgment against Commissioner (Corriette, M.) (Entered: 06/16/2003) |
| 06/18/2003 | 8 | OBJECTION by Scott Talmadje Lewis to [6-1] motion to Extend Time to 7/15/03 to Respond by Commissioner (Corriette, M.) Modified on 06/19/2003 (Entered: 06/19/2003) |
| 06/30/2003 | | ENDORSEMENT granting [6-1] motion to Extend Time to 7/15/03 to Respond ( signed by Mag. Judge Donna F. Martinez ) (Larsen, M.) (Entered: 07/03/2003) |
| 07/21/2003 | 9 | MOTION by Commissioner to Extend Time to 7/31/03 to respond to petition (Corriette, M.) (Entered: 07/22/2003) |
| 07/23/2003 | 10 | MOTION by Scott Talmadje Lewis for Entry of Default as to Commissioner (Corriette, M.) (Entered: 07/24/2003) |
| 07/25/2003 | 11 | OBJECTIONS by Scott Talmadje Lewis to [9-1] motion to Extend Time to 7/31/03 to respond to petition by Commissioner (Corriette, M.) (Entered: 07/29/2003) |
| 07/25/2003 | | ENDORSEMENT granting [9-1] motion to Extend Time to 7/31/03 to respond to petition ( signed by Mag. Judge Donna F. Martinez ) (Jaiman, R.) (Entered: 07/30/2003) |
| 07/28/2003 | 12 | MOTION by Scott Talmadje Lewis for Summary Judgment (Brief Due 8/18/03 ) (Corriette, M.) (Entered: 07/29/2003) |
| 07/28/2003 | 13 | MEMORANDUM by Scott Talmadje Lewis in support of [12-1] motion for |

| | | Summary Judgment (Corriette, M.) (Entered: 07/29/2003) |
|---|---|---|
| 07/31/2003 | 14 | RESPONSE by Commissioner to [1-1] petition (Corriette, M.) (Entered: 08/01/2003) |
| 07/31/2003 | 15 | RESPONSE by Commissioner to [1-1] petition (Corriette, M.) (Entered: 08/01/2003) |
| 08/06/2003 | 16 | MOTION by Scott Talmadje Lewis to Extend Time to 8/18/03 to respond to Answer (Corriette, M.) (Entered: 08/07/2003) |
| 08/06/2003 | | ENDORSEMENT denying [7-1] motion for Default Judgment against Commissioner ( signed by Chief Judge Robert N. Chatigny ) (Jaiman, R.) (Entered: 08/08/2003) |
| 08/11/2003 | 17 | RESPONSE by Scott Talmadje Lewis to [1-1] petition (Corriette, M.) (Entered: 08/13/2003) |
| 08/11/2003 | 18 | MEMORANDUM by Scott Talmadje Lewis in support of [1-1] petition (Corriette, M.) (Entered: 08/13/2003) |
| 08/13/2003 | | ENDORSEMENT granting [16-1] motion to Extend Time to 8/18/03 to respond to Answer ( signed by Mag. Judge Donna F. Martinez ) (Larsen, M.) (Entered: 08/14/2003) |
| 10/29/2003 | 19 | RULING denying 10 Motion for Entry of Default . Signed by Judge Donna F. Martinez on 10/27/03. (Jaiman, R.) (Entered: 11/07/2003) |
| 11/14/2003 | 20 | MOTION for Physical Examination by Scott Talmadje Lewis.Responses due by 12/5/2003 (Corriette, M.) (Entered: 11/19/2003) |
| 11/26/2003 | 21 | Memorandum in Opposition re 20 MOTION Physical Examination (Attachments in Paper Form) filed by Commissioner Of Correction. (Corriette, M.) (Entered: 12/11/2003) |
| 12/22/2003 | 22 | ENORSEMENT denying 12 Motion for Summary Judgment . Signed by Judge Robert N. Chatigny on 12/22/03. (Jaiman, R.) (Entered: 01/09/2004) |
| 02/23/2004 | 23 | ENDORSEMENT ORDER denying 20 Motion Physical Examination . Signed by Judge Robert N. Chatigny on 2/23/04. (Basile, F.) (Entered: 02/23/2004) |
| 03/23/2004 | | DOCKET ANNOTATION re 4 Notice of Appearance. Modified to reflect appearance on behalf of Commissioner of Correction. (Corriette, M.) (Entered: 03/23/2004) |
| 03/23/2004 | 24 | MOTION for Assignment of Case for Trial by Scott Talmadje Lewis.Responses due by 4/13/2004 (Corriette, M.) (Entered: 03/24/2004) |
| 08/05/2004 | 25 | PRISCS - MOTION for assignment of case for trial by Scott Talmadje Lewis.Responses due by 8/26/2004 (Corriette, M.) (Entered: 08/11/2004) |
| 08/05/2004 | 26 | PRISCS - NOTICE to the Court by Scott Talmadje Lewis re 25 MOTION for assignment of case for trial (Corriette, M.) (Entered: 08/11/2004) |
| 03/31/2005 | 27 | PRISCS - ENDORSEMENT ORDER denying 24 Motion for Assignment of Case for Trial . Signed by Judge Robert N. Chatigny on 3/30/05. (Jaiman, R.) |

| | | (Entered: 03/31/2005) |
|---|---|---|
| 03/31/2005 | 28 | PRISCS - ENDORSEMENT ORDER denying 25 Motion for assignment of case for trial . Signed by Judge Robert N. Chatigny on 3/30/05. (Jaiman, R.) (Entered: 03/31/2005) |
| 04/07/2006 | 29 | PRISCS - Emergency Motion for Evidentiary Hearing and Speedy Relief in the interest of justice by Scott Talmadje Lewis. (Corriette, M.) (Entered: 04/17/2006) |
| 09/15/2006 | 30 | PRISCS - ORDER REGARDING FURTHER BRIEFING, Accordingly, the State will have 30 days from today in which to file and serve a supplemental memorandum showing why the Appellate Court's decision bars review of petitioner's claim, notwithstanding his position that he complied (or substantially complied) with the procedural rules invoked by the Appellante Court, because all the components of a federally cognizable default are fully satisfied. If the State wishes to expand the scope of its submission to show that petitioner's claims must be rejected in any event because they are without merit, it is hereby given leave to do so. Petitioner may file and serve a response to the State's supplemental memorandum within 21 days of the date it is filed. . Signed by Judge Robert N. Chatigny on 9/14/06. (Jaiman, R.) (Entered: 09/15/2006) |
| 10/20/2006 | 31 | PRISCS - MOTION for Default Entry 55(a) as to the Respondent by Scott Talmadje Lewis. (Corriette, M.) (Entered: 10/25/2006) |
| 10/23/2006 | 32 | PRISCS - MOTION for Extension of Time, nunc pro tunc, until 10/27/06 to comply with 30 Order regarding further briefing by Commissioner Of Correction. (Corriette, M.) (Entered: 10/30/2006) |
| 10/30/2006 | 33 | PRISCS - MOTION for Extension of Time until 10/30/06 nunc pro tunc to comply with 30 ORDER REGARDING FURTHER BRIEFING by Commissioner Of Correction. (Simpson, T.) (Entered: 11/01/2006) |
| 10/30/2006 | 34 | PRISCS - SUPPLEMENTAL MEMORANDUM of LAW re 30 ORDER REGARDING FURTHER BRIEFING filed by Commissioner Of Correction. (Simpson, T.) (Entered: 11/01/2006) |
| 11/07/2006 | 35 | PRISCS - RESPONSE to 34 SUPPLEMENTAL MEMORANDUM of LAW re 30 ORDER REGARDING FURTHER BRIEFING (exhibits manually filed) filed by Scott Talmadje Lewis. (Corriette, M.) (Entered: 11/08/2006) |
| 01/09/2007 | 36 | PRISCS - RULING and ORDER denying 31 Motion for Default Entry 55(a); granting 32 Motion for Extension of Time nunc pro tunc, until 10/27/06 to comply with 30 Order regarding further briefing; granting 33 Motion for Extension of until 10/30/06 nunc pro tunc to comply with 30 ORDER REGARDING FURTHER BRIEFING Time. Signed by Judge Donna F. Martinez on 1/8/07. (Jaiman, R.) Modified on 1/9/2007 (Jaiman, R.). (Entered: 01/09/2007) |
| 01/09/2007 | | Docket Entry Correction...Modified to make document 30 a hyper link re 36 Order on Motion for Default Entry 55(a), Order on Motion for Extension of Time, Order on Motion for Default Entry 55(a), (Jaiman, R.) (Entered: |

| | | |
|---|---|---|
| | | 01/09/2007) |
| 03/29/2007 | 37 | PRISCS - ENDORSEMENT ORDER denying 29 Emergency Motion for an Evidentiary Hearing. Signed by Judge Robert N. Chatigny on 3/29/07. (Walker, J.) (Entered: 03/29/2007) |
| 02/19/2008 | 38 | PRISCS - MOTION for Evidentiary Hearing by Scott Talmadje Lewis. Motions referred to Donna F. Martinez(Jaiman, R.) (Entered: 02/26/2008) |
| 06/25/2008 | 39 | PRISCS - MOTION to Amend 1 Petition for Writ of Habeas Corpus by Scott Talmadje Lewis. (no proposed amended petition provided)Responses due by 7/16/2008 Motions referred to Donna F. Martinez(Corriette, M.) (Entered: 07/03/2008) |
| 09/05/2008 | 40 | PRISCS - Memorandum in Support re 38 MOTION for evidentiary hearing Conference filed by Scott Talmadje Lewis. (Corriette, M.) (Entered: 09/10/2008) |
| 09/23/2008 | 41 | PRISCS - ORDER. Accordingly, pursuant to Rule 5 (c) of the Rules Governing Section 2254 Cases, respondent is hereby ordered to file, on or before November 3, 2008, a complete transcript of the habeas trial. Signed by Judge Robert N. Chatigny on 9/23/08. (Corriette, M.) (Entered: 09/23/2008) |
| 09/23/2008 | 42 | PRISCS - ENDORSEMENT ORDER re: 38 Motion for Evidentiary Hearing. Denied without prejudice. So ordered. Signed by Judge Robert N. Chatigny on 9/23/08. (Walker, J.) (Entered: 09/23/2008) |
| 09/23/2008 | 43 | PRISCS - ENDORSEMENT ORDER RE: 39 Motion for Leave to Expand the Record to Include Attached Documents. Granted. So ordered.Signed by Judge Robert N. Chatigny on 9/23/08. (Walker, J.) (Entered: 09/23/2008) |
| 09/23/2008 | | Set Deadlines. Responses due by 11/3/2008. Respondents to file a complete transcript of habeas trial (Corriette, M.) (Entered: 09/23/2008) |
| 11/18/2008 | 44 | PRISCS - MOTION for Default Judgment as to all defendants by Scott Talmadje Lewis. (Corriette, M.) (Entered: 11/19/2008) |
| 11/21/2008 | 45 | PRISCS - MOTION for Extension of Time until 1/2/09 to respond to 1 Petition for Writ of Habeas Corpus by Commissioner Of Correction. (Corriette, M.) (Entered: 11/24/2008) |
| 11/25/2008 | 46 | PRISCS - ENDORSEMENT ORDER granting 45 Motion for Extension of Time until 1/2/09 to provide transcripts of the habeas trial re: 1 Petition for Writ of Habeas Corpus. Granted. So ordered. Signed by Judge Robert N. Chatigny on 11/25/08. (Walker, J.) (Entered: 11/25/2008) |
| 11/25/2008 | 47 | PRISCS - ENDORSEMENT ORDER denying 44 Motion for Default Judgment. Denied. Respondent has been granted an enlargement of time until January 2, 2009 to file a complete transcript of the habeas trial. Signed by Judge Robert N. Chatigny on 11/25/08. (Walker, J.) (Entered: 11/25/2008) |
| 11/25/2008 | | PRISCS - Reset Deadlines: Response date 1/2/2009 for respondent to file habeas trial transcripts. (Walker, J.) (Entered: 11/26/2008) |
| 02/20/2009 | 48 | PRISCS - MOTION for Default Judgment as to all defendants by Scott |

| | | Talmadje Lewis. (Corriette, M.) (Entered: 02/23/2009) |
|---|---|---|
| 02/20/2009 | 49 | PRISCS - MOTION for Extension of Time until 3/31/09 to comply with 41 Order, by Commissioner Of Correction. (Attachments: # 1 Transcript of State Habeas Proceeding, Manually Filed)(Corriette, M.) (Entered: 02/23/2009) |
| 02/24/2009 | 50 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephone Status Conference set for 3/6/2009 at 11:00 AM before Judge Robert N. Chatigny. Attorney Sulik will initiate the conference call to chambers at 860-240-3659 with pro se petitioner on the line. (Walker, J.) (Entered: 02/24/2009) |
| 03/06/2009 | 51 | Minute Entry for proceedings held before Judge Robert N. Chatigny: Motion Hearing held on 3/6/2009 re 49 MOTION for Extension of Time until 3/31/09 to comply with 41 Order, filed by Commissioner Of Correction. Oral order granting 49 Motion for Extension of Time. (10 minutes)(Court Reporter Darlene Warner.) (Walker, J.) (Entered: 03/06/2009) |
| 03/06/2009 | 52 | ORDER re 48 Motion for Default Judgment. Denied. Respondent has been granted an extension of time until March 31, 2009 to file a complete transcript. So ordered. Signed by Judge Robert N. Chatigny on 3/6/09. (Gothers, M.) (Entered: 03/11/2009) |
| 03/31/2009 | 53 | PRISCS - NOTICE or Compliance by Commissioner Of Correction re 52 Order on Motion for Default Judgment (Attachments: # 1 All Appendices Transcripts of State Habeas Trial, manually filed)(Corriette, M.) (Entered: 04/01/2009) |
| 09/02/2009 | 54 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephone Conference set for 9/9/2009 at 02:00 PM before Judge Robert N. Chatigny. Atty. Sulik will initiate the conference call to chambers at 860-240-3659 with pro se petitioner on the line. (Walker, J.) (Entered: 09/02/2009) |
| 09/09/2009 | 55 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephone Conference moved from 9/9/09 to 9/16/2009 at 02:00 PM before Judge Robert N. Chatigny. Atty. Sulik will initiate the conference call to chambers at 860-240-3659 with pro se petitioner on the line. (Walker, J.) (Entered: 09/09/2009) |
| 09/16/2009 | | PRISCS - ORAL MOTION for State to provide copies of transcripts from State court criminal trial by Scott Talmadje Lewis. (Walker, J.) (Entered: 09/17/2009) |
| 09/16/2009 | 56 | PRISCS - Minute Entry for proceedings held before Judge Robert N. Chatigny: Telephone Status Conference held on 9/16/2009; Oral order granting Petitioner's motion for Copies (State agrees to provide). Respondent will file supplemental brief re: habeas petition by 11/16/09; petitioner's response due 12/16/09. Court will appoint counsel for petitioner. Total Time: 1 hours and 15 minutes(Court Reporter Darlene Warner.) (Walker, J.) (Entered: 09/17/2009) |
| 09/24/2009 | 57 | PRISCS - MOTION for Leave to File Memorandum of Law (memo in paper form) by Scott Talmadje Lewis. (Corriette, M.) (Entered: 09/30/2009) |
| 11/16/2009 | 58 | Order Appointing Counsel Brett Dignam. Signed by Judge Robert N. Chatigny |

| | | |
|---|---|---|
| | | on 11/14/09. (Gothers, M.) (Entered: 11/17/2009) |
| 11/18/2009 | 59 | ELECTRONIC FILING ORDER - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER. Signed by Judge Robert N. Chatigny on 11/18/09. (Attachments: # 1 E-file attachment)(Walker, J.) (Entered: 11/18/2009) |
| 11/23/2009 | 60 | NOTICE of Appearance by Brett Dignam on behalf of Scott Talmadje Lewis (Dignam, Brett) (Entered: 11/23/2009) |
| 11/30/2009 | 61 | MOTION for Extension of Time until 12/16/09 *within which to file* Supplemental Memorandum see 56 Order on Motion for Copy, Status Conference,, by Commissioner Of Correction. (Sulik, Jo Anne) (Entered: 11/30/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/02/2009 13:38:04 | | |
| **PACER Login:** | gl0399 | **Client Code:** sara.edelstein yale.edu |
| **Description:** | Docket Report | **Search Criteria:** 3:03-cv-00196-RNC |
| **Billable Pages:** | 4 | **Cost:** 0.32 |

# Exhibit B

THE COURT:  Hello.

MS. SULIK:  Judge Chatigny this is Jo Anne Sulik.  Let me get Mr. Lewis on the line.

Mr. Lewis are you there?

MR. LEWIS:  Yes, I'm here.

MS. SULIK:  And Judge, you're still there?

THE COURT:  Yes.

MS. SULIK:  Okay.

THE COURT:  This is a telephone conference.  I wanted to speak with you about where the matter stands at this point.  I have received and read the transcript of the habeas trial.

MS. SULIK:  Okay, those are the ones we provided in March?

THE COURT:  Yes.

MS. SULIK:  Okay.

THE COURT:  And I find that the transcript is important to evaluating the State's argument that there is a procedural bar based on the petitioner's failure to provide the appellate court with this very transcript.

Looking at the transcript, I find that a Brady claim based on the testimony of Detective Sweeney in the hearing before Judge Blue on Mr. Morant's petition for a new trial was explicitly pleaded and argued and litigated

and this Brady claim was addressed by the habeas trial judge in his memorandum opinion.

This is important because in the appellate court the state argued that the only claim that was presented to or decided by the habeas judge was a claim based on newly discovered evidence.  Given the transcript which I've now had an opportunity to review, it seems to me that representation was incorrect.

Let me ask you to be patient while I give you a more detailed statement of the background.  I think it's necessary for me to give you a more detailed statement so that you can understand where we are; and at the conclusion of this, I'd like to speak with you about what we should do next.

MS. SULIK:  Okay, Judge, that sounds good.  It would be helpful, I think.

MR. LEWIS:  I'm amenable.

THE COURT:  All right.  The petitioner claims that the State failed to disclose statements made by its key witness, Mr. Ruiz, to Detective Sweeney at the time he was interviewed by the police in January of 1991.  He relies on Detective Sweeney's testimony in the hearing before Judge Blue where Detective Sweeney testified that Mr. Ruiz made statements that contradicted his trial testimony.  According to Detective Sweeney, Mr. Ruiz told

him that he didn't know anything about this double
homicide, he wasn't there, and he was simply telling
Detective Raucci what Detective Raucci wanted to hear.

This Brady claim was presented to the Superior
Court.  The amended habeas petition filed in January 2001,
which is in the record here at Appendix G, sets out this
Brady claim.  The transcript of the habeas trial shows
that the claim was actually litigated.

The petitioner attempted to offer the testimony
of Mr. Ruiz, but he invoked his Fifth Amendment privilege.
Detective Sweeney could not be found and his testimony in
the matter before Judge Blue was admitted by agreement of
the parties and the transcript thereby became an exhibit.

The petitioner also presented the testimony of
his criminal trial attorney, John Williams, concerning
requests he made for exculpatory information and his
recollection of what he received in response.  The habeas
trial judge heard extensive argument on the Brady claim.
He received post hearing briefs, which included arguments
from both sides on the Brady claim, and he issued a ruling
specifically addressing the claim.

He ruled as follows:  Quote, "The claim of the
petitioner that exculpatory information was not provided
to the defense prior to the trial in 1995 has not been
proven.  This Court finds not only was all exculpatory

evidence furnished to the defense but also the alleged evidence was available by due diligence to the defense and the petitioner was obliged to raise his claims before the trial court or the appellate court.  The petitioner has failed to sustain the heavy burden to establish that the prosecution suppressed evidence."

The Court quoted the case of State v. McIntyre reported at 242 Connecticut 318 with a pinpoint cite of 323.  A 1997 decision.  At that page of the McIntyre case, the Court discusses a defendant's heavy burden to prove a Brady claim.

So the transcript shows that a Brady claim based on the non-disclosure of Ruiz's inconsistent statements to Sweeney was expressly presented, actually litigated, and decided by the Court in the words that I just quoted.

Nevertheless, in its brief on the habeas appeal, the State stated that the only matter litigated in the Superior Court was whether newly discovered evidence entitled the petitioner to a new trial.  The State argued, to obtain a new trial based on newly discovered evidence, the petitioner had to prove that the facts recounted by Sweeney were both unknown and incapable of discovery through due diligence.  That is an incorrect statement of the law.  Under Brady, due diligence has nothing to do with it.

Continuing, the State stated, quote, "If the petitioner had filed a transcript of his habeas corpus hearing, this Court would be able to see for itself that the habeas court correctly concluded that petitioner had failed to prove that Sweeney's testimony, whatever its worth or credibility, constituted newly discovered evidence.  The petitioner's intentional failure to file the transcript leaves this Court, perhaps by design, unaware of what evidence, if any, and arguments of law the habeas court may have heard in this regard."

The State's brief also included the following representations:  "Had the petitioner filed the transcript of his habeas corpus hearing, this Court would find that the issues he has raised on appeal were not litigated in or decided by the habeas court."  I believe that's a quote.

Further, the State represented that because Sweeney didn't testify, the habeas court didn't rule on his credibility or the significance of his testimony.  The State said that all the habeas court ruled on was whether the substance of Sweeney's testimony before Blue was available to the petitioner at the time of his trial in 1995.

The State's brief made no mention of the Brady claim.

In his reply brief in the appellate court, the petitioner objected saying the State totally ignores the defendant's right to disclosure of exculpatory information, citing Brady.

The petitioner's objection was well-founded. His petition specifically alleged that the State violated Brady by failing to disclose exculpatory and impeachment evidence in the form of Ruiz's inconsistent statements to Sweeney. This claim was separate and distinct from the claim for a new trial based on newly discovered evidence which was set forth in a separate count, Count One.

The amended habeas petition in the record at Appendix G alleges in Count Two the following: "The state also failed to disclose exculpatory/impeachment evidence to the defense in the form of a prior inconsistent statement given to then police sergeant Michael Sweeney."

In its response to this count, Count Two of the amended petition, the State said that petitioner could not obtain review of this claim if the alleged exculpatory information was either known by or reasonably available to the defense and that he was obligated to raise this claim on direct appeal if he became aware of it before the appeal was decided and that his failure to do so constituted a procedural default.

The record, including the published opinions of

the Connecticut courts in the Lewis and Morant cases shows
that Detective Sweeney contacted counsel for Morant in
late 1999.  The Connecticut Supreme Court denied
petitioner's appeal in August of 1998, so there was no
procedural default.

In any case, in its reply to the State's
answer, addressing the State's argument that petitioner
could not obtain review of his Brady claim if the
exculpatory information was reasonably available to the
defense, the petitioner himself said his counsel made a
motion for disclosure and did not receive the exculpatory
information.  Continuing he said -- and this is a quote
from his reply -- quote, "Moreover, the State had a
constitutional duty, both state and federal, to disclose
all exculpatory evidence irrespective of any request
made."

Because the petitioner expressly pleaded a Brady
claim, because he actually litigated it, and because it
was decided, it is difficult to understand why the State
would assert in its brief to the appellate court that the
only claim actually litigated or decided was a claim based
on newly discovered evidence.  The State's incorrect
submission may have influenced the appellate court.

Describing the claims on appeal, the appellate
court wrote in its memorandum opinion the following:

"Petitioner claims that the habeas court acted improperly in concluding that the testimony of Michael Sweeney, a police detective, did not constitute newly discovered evidence."

Again, that was not an accurate statement of the claims.  The claims included a Brady claim based on the State's failure to disclose the alleged inconsistent statements made by Ruiz to Sweeney.

The appellate court agreed with the State that the record was inadequate for appellate review.  The Court stated, "Our role is not to guess at possibilities but to review claims based on a complete factual record developed by the habeas court."  The Court went on to say, "We can only speculate as to the existence of a factual predicate for the habeas court's rulings."

Notably the Court made no mention of the petitioner's Brady claim.  It was as if there was no such claim.

That's the background.

The State has argued that the petitioner's failure to provide the appellate court with a transcript of the habeas trial, constituted a failure to comply with a State procedural rule that justified the dismissal of his appeal.

Given the background that I've just covered, I

would ask this question:  Viewing petitioner's claim based on Sweeney's testimony as a Brady claim rather than a claim based on newly discovered evidence, was the record provided to the appellate court deficient so as to render the claim unreviewable?

I think that in addressing this question, it's necessary to consider the elements of a Brady claim. There are three:  The evidence at issue must be favorable to the accused either because it's exculpatory or impeaching; second, the evidence must have been suppressed by the State either willfully or inadvertently; and third, prejudice must have ensued.

As the petitioner here has pointed out, under Brady, a prosecutor has a duty to learn about and disclose exculpatory or impeachment evidence known to other government agents, including the police, who are involved in the investigation.  The petitioner recognizes that according to Sweeney's own account, Sweeney did not tell the State's attorney about Ruiz's inconsistent statements, but under the law of Brady that does not deprive the petitioner of a claim.  To the contrary, because the prosecutor has this duty to disclose exculpatory or impeachment evidence known to other members of the team, so to speak, the fact that Sweeney did not tell the prosecutor does not undermine the petitioner's claim.

Given that these are the elements of a Brady claim, what record did the appellate court need in order to be able to review the claim?  The appellate court needed evidence relevant to the question whether Ruiz made the statements attributed to him by Sweeney and whether the failure to disclose the statements was prejudicial.

With that in mind, I have looked at the record the petitioner provided to the appellate court and I see that he provided the appellate court with testimony by Sweeney, and it's not clear to me what part of the testimony -- what part of Sweeney's testimony before Judge Blue was omitted.  I don't have a transcript, a complete transcript of Sweeney's testimony before Judge Blue and it's not clear to me, at this moment anyway, whether the habeas trial judge had that entire transcript or only part of it, and it's not clear to me exactly what was provided to the appellate court.  But the petitioner argued that his Brady claim could be reviewed based on the transcript of Sweeney's testimony before Judge Blue since that was what the petitioner was relying on to sustain his burden of proof.

Unfortunately the appellate court did not deal with the Brady claim.  The appellate court did not say "This is the claim under Brady, these are the elements of a Brady claim, this is what the petitioner has provided us

in the record on appeal and that record is inadequate to permit us to review the Brady claim for the following reasons."  That didn't happen.

Instead the appellate court, following the State's argument in its brief, dealt with the matter as if there was a claim based on newly discovered evidence, and in the absence of a complete transcript from the habeas trial, they were not in a position to review that claim.

Where does that leave us?  I've summarized the background and I hope you can understand that I regard this as an unusual situation.  I would like to know why the record provided to the appellate court was insufficient to permit review of the Brady claim that was rejected by the habeas trial court.

If the petitioner omitted to provide the appellate court with relevant evidence, that is evidence relevant to the Brady claim, I'd like to know what was omitted and I'd like to know why the omission was material justifying a dismissal of the appeal for failure to provide an adequate record to permit review of the Brady claim.

Apart from the issue relating to the adequacy of the record, the appellate court noted that the petitioner had failed to address the question whether Justice Katz abused her discretion in denying certification to appeal,

the State urged this as a defect that justified dismissal.
The petitioner has argued that in briefing the merits of
the Brady claim, he was showing that his rights had been
violated and that Justice Katz had abused her discretion.
Although he didn't say that in so many words, he says it
was implicit in his argument.

I don't know where the State stands on that.  Is
the State taking a position that this was itself a
sufficient ground to bar review of the claim?  That needs
to be clarified.  If the State contends that the
petitioner's failure to brief the issue is sufficient,
then I'd like to know why.

It is the State's burden to show that the
procedural rule was firmly established, regularly followed
and reasonably available to the petitioner, and with
regard to both the alleged insufficiency of the record and
the alleged failure to brief the issue whether Justice
Katz abused her discretion, it would be important for the
State to show that the rules were well established,
regularly followed and reasonably available to petitioner.

With regard to the Brady claim, the petitioner
says that he thought he was providing the Court with
whatever it needed.  In its brief here, the State refers
to Federal Rule of Appellate Procedure 10, which requires
an appellant to provide the Court of Appeals with all

evidence relevant to a challenged finding.  Perhaps the
State is suggesting that this is the State rule, in which
case, I would need to know what evidence relevant to the
Judge's rejection of the Brady claim was omitted.

With regard to the petitioner's failure to
specifically brief the issue whether Justice Katz abused
her discretion, I would appreciate it if the State could
point to whatever case law or other published authority it
relies on as providing fair notice to petitioners that if
they fail to brief that issue in so many words that their
appeal will be dismissed.

So far I've talked about matters relating to the
State's argument that there is a procedural bar.  I'd like
to turn now to talk briefly about the merits.

Assuming for the moment, and solely for the
purpose of trying to move this case along, that there is
no procedural bar, and without expressing a view on that
one way or the other, but just assuming that for the sake
of today's conference, let's turn to the merits of the
Brady claim.

Under applicable federal law a federal court
cannot grant habeas relief to a State prisoner on a claim
that was adjudicated on the merits in state court unless
the adjudication of the claim resulted in a decision that
was contrary to or involved an unreasonable application of

clearly established federal law as determined by the
Supreme Court of the United States or resulted in a
decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the
state court proceeding.  In addition, a determination of a
factual issue made by a state court is presumed to be
correct and the petitioner has the burden of rebutting the
presumption of correctness by clear and convincing
evidence.

If Ruiz made the statements attributed to him by
Sweeney, we would have a claim in which statements that
are clearly impeaching were not disclosed.  The habeas
trial court made no explicit finding on the initial
question whether Ruiz made the statements attributed to
him by Sweeney.  The Court said that all exculpatory
evidence was disclosed to the defense.  Does this
constitute an implied finding that Ruiz did not make the
statements attributed to him by Ruiz?

Coming back to the State's brief in the
appellate court, the State made a representation to the
effect that the habeas trial judge did not pass on
Sweeney's credibility.

Putting that aside, does the Court's statement
that all exculpatory evidence was disclosed constitute an
implied finding rejecting Sweeney's testimony?

The Court also said, "The alleged evidence was available by due diligence."  Again the Court said that addressing the petitioner's Brady claim.

Because the claim dealt with Sweeney's failure to disclose Ruiz's statements to the prosecutor, the Court's reference to the alleged evidence would seem to refer to Ruiz's alleged statements as recounted by Sweeney.  If that's so, then the Court seems to have made two contradictory findings:  First, that the alleged statements were not made; And second, that they could have been discovered by due diligence.

Can this be what the Court actually had in mind?

It's possible that the Court credited Sweeney's testimony that Ruiz made inconsistent statements but rejected the Brady claim on the ground that as the State itself argued, the defense failed to act with due diligence.  If that's what the Judge actually ruled, then the Judge clearly erred as a matter of law.

So that's where we are at the moment.

I've attained the transcript of the habeas trial, which in my view should have been provided to the appellate court, but that's a matter of my personal opinion, I suppose.  In any event, I have reviewed it and this is what I find.  And the question now becomes where do we go from here?

Is the State going to maintain that the Brady claim is barred because of the petitioner's failure to provide the appellate court with an adequate record to permit review of the Brady claim?  If so, I need to know what relevant evidence was omitted and why that was material.

Is the State going to maintain that the petitioner's failure to brief the issue of Justice Katz's denial of certification was itself sufficient to establish a procedural bar here?  If so, I need to know why that should be the case.

Going beyond the issue of the procedural bar, looking at the merits, how do you read the state court's ruling rejecting the Brady claim?  What did the state court find?  What rule of law did the state court apply? Did the state court find that all exculpatory evidence was disclosed because Ruiz never made the statements attributed to him by Sweeney?  Is that what the state court said?  And if so, how do you explain the state court's finding that this alleged evidence was available by due diligence?  Is there some other alleged evidence the court might have been referring to?  If not, how do you deal with the contradiction?  And if what the court actually did was impose a burden of due diligence on the petitioner under the Brady claim, where does that leave

us?

This case has been around a long time.  I have
spent a lot of time on the case.  I have done what I
believe my duty requires me to do to understand what
happened and to deal with it, and it has meant requesting
additional materials and receiving them, going through
them carefully and trying to figure out how best to
proceed.  I've reached another point along the way.

At this time, Mr. Lewis --

MR. LEWIS:  Yes?

THE COURT:  -- I'm wondering whether it wouldn't
be in everybody's interest, including yours, if I
appointed counsel to represent you.  I think you've done a
more than adequate job as a pro se petitioner and I don't
mean to imply anything to the contrary.

MR. LEWIS:  Thank you.

THE COURT:  But you are not an experienced
habeas lawyer, I'm not an experienced habeas lawyer, and I
think that you should consider whether it would be in your
interest, given where we are and given what has happened,
if you were to be represented by counsel.

I know that you've filed a second habeas
petition, which has been the subject of an evidentiary
hearing, a written opinion by Judge Schuman, an appeal, a
recent decision by Judge Lavine for the appellate court.

MR. LEWIS:  Right.

THE COURT:  And I know that your co-defendant,
Mr. Morant has had multiple proceedings resulting in
published opinions.

MR. LEWIS:  Correct.

THE COURT:  But from my point of view, if we had
experienced habeas counsel in this case it would be
helpful.  Please understand I have hundreds of cases.

MR. LEWIS:  Right.

THE COURT:  And I'm not your lawyer.

MR. LEWIS:  Right.

THE COURT:  I suggest that to you because I
believe that it would be helpful not only to me but also
in the best interest of the parties, including you.

MR. LEWIS:  Right.

THE COURT:  So I'd like you to think about that
and I'd like you to let me know your position.

MR. LEWIS:  I, you know, was thinking about
that, you know, I have considered if for some time.  My
only problem is, you know, the question of who.  It's not
whether I had a question of whether I would seek help, but
it's the quality to the help that's available.  Of those
willing to help and those that would have time to actually
put forth the claims as they should be put forth.  I think
that's the only problem I've been having with counsel over

the course of the years is no one really wanted to address

the Sweeney issue head on.  It's like for some reason

everybody would avert what the evidence actually means and

that's the problem I've been having with regards to

counsel.

Because I had counsel a couple of times willing

to help me in a pro bono capacities, but time became an

issue, how they wanted to pursue the claim became an

issue, and those type of things.

So it's not a matter of not accepting counsel,

it's just a matter of, you know, who's going to be willing

to do the job and to put forth the truth, the

unadulterated truth, before the Court.  And that's the

problem I've been having.

THE COURT:  All right Attorney Sulik, what do

you think we should do at this point?

MS. SULIK:  Well, the counsel issue certainly

should be resolved first.  Perhaps you can give Mr. Lewis

a couple weeks to think about it.  Once we have a decision

on that, I would guess further briefing on the issues that

you have raised today would be appropriate.

Your Honor, if I could ask Mr. Lewis a question?

THE COURT:  Sure.

MS. SULIK:  Mr. Lewis, at your habeas trial in

front of Judge Schuman, did you offer the exhibits from

your first habeas trial in New Haven?

        MR. LEWIS:  Some of them were offered, yes.

        MS. SULIK:  Okay.  The reason I ask is that,
Your Honor, is that your prior order had asked me to file
the transcripts and then the parties' briefs at the first
habeas hearing, that's the one in New Haven.

        THE COURT:  Right.

        MS. SULIK:  I spoke with someone last week down
there, Frank Murphy, out of the clerk's office.  They
can't find the exhibits from Mr. Lewis' first habeas.  So
it's useful now for me to know that he had them filed in
the second habeas.  I can track them down that way.

        MR. LEWIS:  Well, all of them wasn't -- all of
the exhibits wasn't filed.  I have copies because I
requested copies of the exhibits from the first habeas.
So I do have copies of all the exhibits that were
introduced in the first habeas which I attached to the
memorandum before the Court now, the memorandum of -- in
response to the supplemental briefs.

        MS. SULIK:  Okay, okay.

        THE COURT:  So, Mr. Lewis, you think that I have
all the exhibits that were presented to the habeas trial
court?

        MR. LEWIS:  Well, you have, I would say, like
80 percent of them.  In my supplemental response in the

memorandum of law dated November 2nd, I think it was, I
attached most of the exhibits there.

In regards to Sweeney's testimony, his testimony
and the criminal trial transcripts were filed in your
court with exhibits with entry numbers 12 and 13.  I think
I filed a motion for summary judgment some time ago and I
provided the Court with the trial transcripts as well as
Sweeney's testimony that was admitted before the habeas
court.

THE COURT:  Well, we have recently received from
Attorney Sulik the transcript of the underlying criminal
trial.  It's in several volumes.

MR. LEWIS:  Right.

THE COURT:  We have that.

MR. LEWIS:  Now, the Sweeney testimony can be
found -- like I said, I filed with the court with entry
number 12 and 13, and that was from years ago.

THE COURT:  All right.  I'm going to ask you to
do your best to recall what happened, understanding that
you may not be able to remember exactly, but in the habeas
trial, was the complete transcript of Detective Sweeney's
testimony before Judge Blue admitted as an exhibit?

MR. LEWIS:  Yes, they were.  They were full
exhibits.

THE COURT:  So Judge Zoarski had the entire

transcript of Sweeney's testimony before Judge Blue?

MR. LEWIS:  Yes, they were dated October 25th,
1999 and October 26th, 1999.  They were in two volumes.

THE COURT:  All right I don't believe we have
the entire transcript.

MR. LEWIS:  Well, I filed that with the motion
for summary judgment.  Again, I think I notified your
clerk last week when I called because I wasn't aware that
the conference had been rescheduled, and I indicated to
that particular clerk -- I forget the gentleman's name,
but I told him that those exhibits could be found at entry
number 12 and 13 before this court.  It was docketed.

THE COURT:  Is it your belief that those items,
items 12 and 13, include --

MR. LEWIS:  I have the docketing sheet in front
of me, the federal docketing sheet.  And as I recall they
were numbers 12 and 13 on the docketing sheet.

THE COURT:  And you believe that between the two
you have provided us with a complete transcript of
Sweeney's testimony.

MR. LEWIS:  Yes, that was the complete
transcript of his testimony.  Again dated October 25th and
October 26th of 1999.  The direct examination and the full
cross-examination by Dearington.

THE COURT:  All right.  And are you able to

recall what you provided to the appellate court with
regard to Sweeney's testimony?

        MR. LEWIS:  Yes.  I provided those same
exhibits.  They actually were sent up from the trial court
to the appellate court.

        THE COURT:  So the appellate court had whatever
the trial court had?

        MR. LEWIS:  Yes.

        THE COURT:  All right.

        And Mr. Lewis, while we're on the subject, what
else did you provide to the appellate court?

        MR. LEWIS:  In regards to --

        THE COURT:  In regard to your Brady claim based
on Sweeney's testimony.

        MR. LEWIS:  Well, the Brady claim was premised
on Sweeney's testimony in and of itself.  You know, that
was in regards to the other exhibits that the appellate
court had, I think that would be in the record that was
filed.  And there was numerous exhibits, FBI exhibits.
All the exhibits that were introduced before the trial
court.  I think it's -- if I'm not mistaken, I think it
was like 16 of them.

        THE COURT:  All right.  Well, I think that if I
understand Mr. Lewis correctly, he would like to have
counsel appointed provided the lawyer is experienced and

willing to give the matter the time and effort called for.

        MR. LEWIS:  Correct.

        THE COURT:  On that understanding, I will attempt to find counsel for you.  This would be experienced counsel.

        MR. LEWIS:  Right.

        THE COURT:  And I'll ask the clerk to undertake that right away.

        MR. LEWIS:  Okay.

        THE COURT:  In the meantime, it is important that we establish on the record here what was provided to the appellate court and what was left out.

        I'm assuming that the State is intending to stand by its position that there is a procedural bar here. Perhaps I'm getting ahead of myself.  But Attorney Sulik, I take it that's what you have in mind?

        MS. SULIK:  Yes, yes.

        THE COURT:  All right then.

        In addition to appointing counsel, in an effort to move the case along, I'd like to set a date for the State's submission of a supplemental brief addressing the issues that I've stated today.

        MS. SULIK:  Okay.

        THE COURT:  I trust that a transcript would show exactly what I asked.  I am reluctant to try to

recapitulate it, but basically I need to know why the record provided to the appellate court was insufficient to permit review of the Brady claim and if that insufficiency fairly justifies a procedural bar because the petitioner should have known better.

Again, I would need to know where the State stands with regard to the petitioner's failure to brief the issue whether Justice Katz abused her discretion. Is the State claiming that this itself is sufficient to establish a procedural bar? And if so, why? You know, in what way does this further a legitimate State interest and how would a petitioner know that that failure to brief the issue in those terms would risk dismissal of the appeal even though the very issue was being briefed in substance by the petitioner in seeking relief on the merits?

Going beyond that, I would like to have the State's position on how I should view the habeas trial judge's ruling rejecting the Brady claim. What finding did the State judge make? What rule of law did he apply?

And finally, I would like the State to tell me what it thinks I should do, okay?

MS. SULIK: Okay.

THE COURT: What would be a realistic date for that supplemental brief?

MS. SULIK: Today is the 16th of September. If

I could have 60 days, I think that's reasonable.

        THE COURT:  All right.

        Mr. Lewis, any comment?

        MR. LEWIS:  Just that I be afforded to get a copy of that, obviously.

        THE COURT:  Yes.

        MR. LEWIS:  And if Ms. Sulik doesn't mind, I received a letter saying that she sent copies of the criminal trial transcripts to Your Honor.

        THE COURT:  Yes.

        MR. LEWIS:  I was wondering if she would be able to send me a copy of those transcripts being that the transcripts I had I filed with the appellate court just recent on the other issue I had in the state court.

        MS. SULIK:  That's not a problem.  I -- Your Honor, I sent Mr. Lewis a letter saying I assumed he had them, but if he didn't, I'd provide him with a copy.  So I will have my secretary do that.

        THE COURT:  Okay.

        Mr. Lewis, you mentioned the pending State proceeding.

        MR. LEWIS:  Right.

        THE COURT:  Is that an appeal from the appellate court?

        MR. LEWIS:  That was an appeal -- right.  That

was the habeas court denied the petition, then it went to
the appellate court.  The appellate court denied the
position and now I filed a petition to the Supreme Court
which I expect them to deny.

THE COURT:  Do you have any other pending
litigation relating to your conviction?

MR. LEWIS:  No, sir.

THE COURT:  What became of your request for DNA
evidence?

MR. LEWIS:  The request for DNA evidence was
denied by the trial court.  We went to the appellate
court.  I reached an agreement with the State to withdraw
the appeal if they were to release the evidence and have
the DNA testing done at my own expense.  So my family paid
for the DNA testing, but the results of the DNA testing
came back to be all of the victim's blood.  So it didn't
help.

THE COURT:  I see.

MR. LEWIS:  So all the testing came back and
revealed that all the biological evidence had belonged to
the victims in the case.

THE COURT:  All right.

To summarize, the clerk will undertake to
appoint counsel for the petitioner and the State will have
60 days in which to submit a supplemental brief addressing

the matters that we've discussed today.  The State will
provide the petitioner with a copy of the criminal trial
transcript.  And in due course, the petitioner or his
counsel will be provided with a copy of the State's
supplemental brief.

Once that supplemental brief is filed, the
petitioner will have time to submit a reply.  Why don't we
say that it will be filed 30 days after the State's
submission.  And to avoid uncertainty, why don't we set
dates.

The State's supplemental brief will be filed and
served on November 16, 2009, and the defendant's reply
will be due on December 16, 2009.

MR. LEWIS:  One question, Your Honor, I was
wondering if these could be firm dates?  Not that -- I
know these things take a lot of time and you have a lot of
cases, as Ms. Sulik, but as you noted earlier, this has
been going on for quite some time now.  I was wondering if
those could be firm dates.

THE COURT:  I'm treating them as firm dates.
Certainly I think the date for the filing of the State's
submission should be viewed that way.

Your counsel, assuming we can appoint
appropriate counsel for you, on receiving the State's
supplemental submission, may need a little more time.  But

I think that for people who have been involved in this case all these years, you know, these dates should be viewed as firm.

MR. LEWIS:  All right.

Another question, Your Honor, in addition to the matter about counsel being appointed, would it be appropriate if I would just accept standby counsel? Because I do understand my interest as I stated.  I have put a lot of hard work in this over the years, and to just, you know, surrender any decision-making or any control on how the matter is proceeding is a little troubling to my spirit.  But I would be more than happy to accept some assistance.

So would it be appropriate if the Court could maybe just appoint like standby counsel to assist me in the matter?

THE COURT:  Well, I think your request is understandable and let me say this:  From my point of view, one of the significant benefits to be gained from having experienced counsel in the case is to have a lawyer who can review the record and the case law --

MR. LEWIS:  Right.

THE COURT:  -- and given his or her experience in the area provide me with, you know, the best possible guidance.

MR. LEWIS:  Right.

THE COURT:  Again I think you've done a more than adequate job but, as I said, you don't have that expertise.

MR. LEWIS:  Right.

THE COURT:  That's what I'm looking for.

MR. LEWIS:  Okay.

THE COURT:  I think that your lawyer will certainly understand the commitment you've made to the case and it remains your case.

MR. LEWIS:  Right.

THE COURT:  If important decisions need to be made, you should be the one making the important decisions --

MR. LEWIS:  Right.

THE COURT:  -- with the benefit of your lawyer's expertise --

MR. LEWIS:  Right.

THE COURT:  -- with regard to habeas law and procedure, which is not uncomplicated.

So I would propose to appoint counsel for you in the expectation that you and your lawyer would be able to work effectively together.

MR. LEWIS:  Right.

THE COURT:  If that didn't happen, then you

could let me know.

        MR. LEWIS:  Right.

        THE COURT:  But we're talking now about briefing somewhat complicated legal issues and I think that the concept of standby counsel doesn't work well --

        MR. LEWIS:  Right.

        THE COURT:  -- when that's what needs to be done.  If it were a hearing or a trial, it would be different.

        MR. LEWIS:  Okay.  One other question.

        Being that the trial lawyer was a witness in the case, would it be appropriate to have the trial lawyer handle it, and John Williams maybe?  Only because I'm trying to see if I could get an attorney that have some familiarity with the situation just to maybe expedite it a little bit.  Or he'll be able to expedite it as opposed to having a brand new attorney coming in and he have to learn everything all over again from like scratch.  Because it would seem to me that would be the part that would be so time consuming on the appointed counsel's involvement in the situation.

        THE COURT:  I have not considered whether it's wise to ask a lawyer who defended a person at trial to take on what amounts to a habeas appeal.  So I don't feel comfortable suggesting what would be best in that regard.

I will tell you that Mr. Williams is not on our panel.

MR. LEWIS:  Okay.

THE COURT:  And on that basis alone and for that reason, if for no other, we would be asking somebody else.

MR. LEWIS:  Right.

THE COURT:  My inclination is to ask the clerk to contact the clinic at Yale Law School --

MR. LEWIS:  Right.

THE COURT:  -- which has been willing to provide assistance to habeas petitioners on a pro bono basis in the past.

MR. LEWIS:  Right.

THE COURT:  And the clinic does offer the sort of experienced counsel that we're looking for because the faculty members who run the clinic have expertise in this area.

MR. LEWIS:  With all due respect to that suggestion, Your Honor, I contacted the Yale Law School quite some time ago as well as the UCONN Law Clinic for some assistance, and I guess at those particular times because of the overflow of help that they were seeking, I was told that they didn't, you know, have the time to give the attention to my situation.  That's why I haven't used them in the past, but I have contacted them in the past.

THE COURT:  Okay.  Well, we'll give it a try and
see what happens.  It may be that we'll have difficulty
finding somebody, in which case you're going to have to
continue to do your best as you have to date.

MR. LEWIS:  Right.

THE COURT:  But we'll see what we can do.

MR. LEWIS:  Okay.

THE COURT:  Anything else for today?

MS. SULIK:  I think that covers everything from
me, Your Honor.

MR. LEWIS:  Right.  Just one further note.

Again, the Sweeney testimony, it could be found
in the docket entries 12 and 13 that I filed with this
court some -- back some time ago.  I think they were
accompanied with a motion for summary judgment that I
filed at the very beginning of these proceedings.

THE COURT:  Okay.  All right.

Anything else?

MR. LEWIS:  Not that I have, Your Honor.

THE COURT:  All right, fine then.  Thank you
very much.

MR. LEWIS:  All right, thank you, Your Honor.

Thank you Ms. Sulik.

MS. SULIK:  Thank you.

MR. LEWIS:  Expecting those transcripts soon

then?

        MS. SULIK:  Within a week I would say.

        MR. LEWIS:  Okay, thank you very much.

        Thank you, Your Honor.

        THE COURT:  All right, good-bye.

        MS. SULIK:  Bye.

           (Proceedings adjourned at 3:20 p.m.)