**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | **PRISONER** |
| **SCOTT T. LEWIS,** | : | **CASE NO.   3:03CV196(RNC)** |
| *Petitioner* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COMMISSIONER OF CORRECTION,** | : | **DECEMBER 16, 2009** |
| *Respondent* | : | |

<u>**RESPONDENT'S SECOND SUPPLEMENTAL**</u>
<u>**MEMORANDUM OF LAW**</u>

This supplemental memorandum is submitted in response to this Court's request for supplemental briefing of September 16, 2009.  See [Doc. # 56].  In this supplemental memorandum, the respondent submits that the petitioner's claim of "newly discovered evidence" of perjury and his claim that the state suppressed exculpatory evidence are not exhausted and are procedurally defaulted.  As a result, they must be dismissed.

**I.     SUPPLEMENTAL ARGUMENT**

In his petition for writ of habeas corpus, the petitioner claims that: (1) he was denied due process because exculpatory evidence was suppressed; (2) his conviction was based on perjured testimony; and (3) his right to present a defense was violated because a "third-party confession" was not admitted at trial.  For the reasons described below, the petitioner's claims must be dismissed.

**A.     The Petitioner Has Not Exhausted His First and Second Grounds for Relief**

The petitioner did not present his claims that the State relied on perjured testimony or that the State suppressed exculpatory evidence in violation of the principles established in *Brady v. Maryland* when he sought discretionary review by the Connecticut Supreme

Court.  Rather, he challenged the Appellate Court's determination that he failed to brief or mention that certification was denied and that he failed to provide an adequate record when he chose not to file the transcript of the habeas trial.  Thus, he did not "fairly present" his first and second grounds for relief to the Connecticut Supreme Court.  As a result, those claims are not exhausted and they must be dismissed.

### 1.    Procedural history of claim

At the state habeas trial, the petitioner sought relief pursuant to a three-count habeas petition in which he raised several issues.  On appeal to the Connecticut Appellate Court, however, he only pursued those allegations that pertained to former New Haven police detective Michael Sweeney's testimony at Stefon Morant's post-conviction proceeding.  Specifically, he framed his issue, as follows:

> Whether the habeas court abused its discretion in ruling that former Detective Michael Sweeney's testimony was insignificant, failed to prove evidence of Ovil Ruiz untruthfulness in his statements, was not suppressed, and did not constitute newly discovered evidence and whether the habeas court applied the proper standard of review concerning the "undisclosed evidence" of Michael Sweeney's testimony?

Appendix H at 1.

The petitioner also raised a claim, not at issue in these proceedings, that the habeas court should have applied an adverse inference against the respondent because Ovil Ruiz asserted his privilege against self-incrimination when called to testify at the petitioner's habeas trial.  The Connecticut Appellate Court refused to review the merits of these claims because the petitioner (1) failed to provide an adequate record when he deliberately chose not to file the transcripts of the state habeas corpus proceeding and (2) failed to brief the issue of the denial of certification to appeal.

2

Thereafter, the petitioner sought discretionary review by the Connecticut Supreme Court. In so doing, he raised two questions: (1) Whether the Appellate Court erred "in finding that the petitioner's failure to advance any argument in his appellate brief . . . challenging the propriety of the [d]enial of [c]ertification to appeal and the petitioner's election not to file the complete transcript of the habeas court . . . render his claims unreviewable as a matter of course" and (2) if the answer the first issue is "yes," whether the court erred in concluding that there was no abuse in discretion in denying his certification to appeal . . . ." Appendix K at 1. The Connecticut Supreme Court denied discretionary review. *Lewis v. Commissioner of Correction*, 262 Conn. 938 (2003).

### 2.   The petitioner's failure to "fairly present" his federal claims to the Connecticut Supreme Court renders those claims unexhausted

Federal habeas corpus relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A). Indeed, even if a petitioner can demonstrate a "clear violation" of his rights, federal relief is unwarranted unless available state remedies are exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981) (per curiam). This "exhaustion requirement springs primarily from considerations of comity." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982). It requires that federal courts refrain from exercising "habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law" and, thus, demonstrates "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Id.*

3

In order to satisfy the exhaustion requirement, "'[i]t is not sufficient merely that the [petitioner] has been through the state courts.' . . . Rather the petitioner's claims must be fairly presented so the that state has the opportunity to correct any alleged constitutional violations. . . ." (Citations omitted.) *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). Indeed, the U.S. Supreme Court has explained that to "protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e*., whether he has fairly presented his claims to the state courts. . . ." (Emphasis in original.) *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) citing *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989). *See also Howard v. Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999) (fair presentment "requires the petitioner to have given the state courts a meaningful opportunity to pass upon the substance of the claims she later presses in federal court"). A petitioner has "fairly presented" a claim if he has "'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). To have done so, the petitioner 'must have set forth the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim.' *Id."* *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). "[T]he ways in which a state defendant may fairly present to the state

4

courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194.

Here, the petitioner challenged the Connecticut Appellate Court's determination that his claims were not reviewable but he did not present the Connecticut Supreme Court with his perjury or *Brady* claims. See Appendix K. This failure renders his claims unexhausted. Merely because the justices of the Supreme Court of Connecticut could have divined his constitutional claims by reading the decisions of the lower courts and his briefs to those courts does not establish that he "fairly presented" his constitutional claims to that court. *Baldwin v. Reese*, 541 U.S. 27, 31, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). In other words, a state prisoner does not fairly present a claim to the state court if that court must read beyond the petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material. . . that does so." *Id.* at 32. Indeed, in the instant case, the petitioner's application for discretionary review did not alert the justices of the Connecticut Supreme Court that he was presenting to them for review any federal claim by citing cases indicating the "federal nature of the claim" or reciting "a factual description supporting the claim." *Id.* at 33. Rather, he repeatedly attacked the Appellate Court's determination that he had not briefed the certification issue and had not filed the transcripts. Appendix K. At no point did he even discuss what his new evidence was and

5

why that evidence was exculpatory or material.[1]  Instead, he simply referred to it as "the testimony of former Detective Michael Sweeney."  *Id.  See Reese*, 541 U.S. at 33 (finding claim not fairly presented where, in part, "the petition does not even contain a factual description supporting the claim").  Similarly, he failed to "fairly present" his federal claims because he did not attempt to explain why Sweeney's testimony constituted "newly discovered evidence" of perjury or, alternatively, revealed a *Brady* violation.

As a result, the petitioner did not  "fairly present" his claims to the Connecticut Supreme Court.  He simply did not identify the perjury and *Brady* claims as questions for

---

[1]      In relevant part, Connecticut Practice Book § 84-5(a) requires that a petition seeking review by the Supreme Court include:

(1)    *A statement of the questions presented for review*, expressed in the terms and circumstances of the case but without unnecessary detail. The supreme court will ordinarily consider only those questions squarely raised, subject to any limitation in the order granting certification.

(2)    A statement of the basis for certification identifying the specific reasons, including but not limited to those enumerated in Section 84-2, why the supreme court should allow the extraordinary relief of certification.

(3)    *A summary of the case containing the facts material to the consideration of the questions presented*, reciting the disposition of the matter in the appellate court, and describing specifically how the appellate court decided the questions presented for review in the petition.

(4)    *A concise argument* amplifying the reasons relied upon to support the petition. No separate memorandum of law in support of the petition will be accepted by the appellate clerk.

(Emphasis added.)

6

review and he failed to "'[inform] the [Connecticut Supreme Court] of both the factual and the legal premises of the claim he asserts in federal court.' *Daye*, 696 F.2d at 191.  For this reason alone, the petitioner's claims are not exhausted and may not be reviewed by this Court.  As a result, his first and second claims must be dismissed.

### B.  The Petitioner Cannot Obtain Relief On His First Claim

In his petition, the petitioner claims that: (1) he was denied due process because exculpatory evidence was suppressed; (2) his conviction was based on perjured testimony; and (3) his right to present a defense was violated because a "third-party confession" was not admitted at trial.  In addition to his failure to exhaust these claims, the petitioner defaulted them in the Connecticut Appellate Court.  Thus, for this alternative reason, these claims must be dismissed.

### 1.  Procedural history of the claim

In the first count of his state habeas corpus petition, the petitioner asserted that the State relied upon perjured testimony at his 1995 criminal trial.  Specifically, he alleged that "newly discovered evidence" demonstrated that a state's witness, Ovil Ruiz, committed perjury.  That "newly discovered evidence" was Ruiz' recantation of February 22, 1996.  Appendix G at 6-7.  The state habeas court resolved that claim, as follows:

> The first count alleges that Ovil Ruiz committed perjury at the criminal trial when the petitioner was convicted of two counts of murder and felony murder on May 10, 1995.  Ovil Ruiz testified under oath at that trial.  On February 22, 1996, the petitioner alleges Ovil Ruiz stated to the F.B.I. that he had lied at the trial and the petitioner had nothing to do with the crimes for which the petitioner was convicted.
>
> The evidence in this case has established that October 11, 1990, in the early hours of the morning, Ricardo Turner and Edward Lamont Fields were

7

shot dead.  The killings occurred at 634 Howard Avenue, New Haven, Connecticut.  The petitioner and Stefon Morant were arrested and charged with two counts of murder and two counts of felony murder.  On January 13, 1991, Ovil Ruiz was arrested and brought to the Detective Division for questioning.  The statement from Ruiz was tape recorded on January 14, 1991.  In that statement Ruiz states he had sold drugs for the petitioner and Morant for two years.  Ruiz said he over heard a discussion between Morant and the petitioner that the petitioner shot two guys who tried to run away with my money and my drugs.  Ruiz later saw the petitioner throw the murder weapon into the water near the Chapel Street bridge.

Ruiz then remained in custody until March 19, 1991, when he was released. On April 11, 1991, he was rearrested and convicted thereafter on larceny and narcotics charges.  On May 28, 1991, Ruiz tape recorded and signed a statement in the office of the State's Attorney in the presence of his attorney, David Gold and Detective Raucci.  In that statement he stated he obtained guns for the petitioner and Morant and drove them to the scene of the crime where the petitioner and Morant went into the house.  He then heard shots and saw the petitioner come out with a bag of money, and Morant with a Puma bag containing drugs.

At the trial of the petitioner, Ruiz was presented as a state's witness.  He was extensively questioned by the attorney for the petitioner while he was under oath.  He testified he was in danger in the general prison population because of his cooperation with the police and the state's attorney in the prosecution of the petitioner.  Ruiz was a key witness for the state, and the petitioner raised questions as to his mental health both at the trial and in the appeal to the Supreme Court.

On February 22, 1996, Ruiz while in prison gave a statement to the F.B.I. He then stated that Detective Raucci, who had recently been suspended and arrested by the New Haven Police Department, was involved with drug dealers named Armando and Raul Luciano, Frank Parese and a Colombian named "Loco."  He stated they killed the victims not the petitioner and Morant. Ruiz said he was used to "set up" the petitioner by Detective Raucci and Parese's drug distribution operation.

On October 24, 1996, Ruiz gave a different statement to the F.B.I. that he had killed Edward Lamont Fields when he fired shots into his chest with a .357 caliber revolver, and Raul shot Turner with a .38 caliber revolver. At the petitioner's trial the physical evidence established both victims were murdered by a .347 caliber weapon, and they both were shot in the back.

On February 16, 1997, Ruiz gave a final statement to the F.B.I. that he was pressured to lie to the F.B.I. and the statement he gave regarding Detective Raucci and State's Attorney Gold was false. Ruiz then stated the testimony he had given at the trial of the petitioner in 1995, was the truth.

At the hearing on this habeas petition the petitioner presented Ovil Ruiz as a witness. Ruiz then invoked his constitutional privilege against self-incrimination and he refused to testify based upon his exposure to murder and perhaps perjury charges for his involvement in the murders.

The claim of the petitioner that Ovil Ruiz had testified falsely at the criminal trial of the petitioner has not been proven. False testimony may only be the basis of a new trial when: "(a) the court is reasonable well satisfied that the testimony given by a material witness is false; (b) that without it the jury might have reached a different conclusion; (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it. . . " *Prudlik v. State,* 131 Conn. 682, 687 (1945); *Talton v. Warden,* 33 Conn.App. 171, 177 (1993).

The petitioner has filed a post trial brief which discussed the statement taken from Ovil Ruiz on January 14, 1991. He argues that Detective Sergeant Sweeney was critical of Detective Raucci. He contends Detective Raucci therefore, conveyed false or misleading information to Ruiz. Detective Sweeney's testimony at the trial of Morant disclosed that the information provided by Detective Raucci was insignificant and did not disclose the names of the petitioner or Morant. It also did not reveal numerous other significant facts which were disclosed by Ovil Ruiz in his statements as well as his testimony at the trial of the petitioner. The statements obtained from Ruiz on January 14, 1991, and May 28, 1991, were available to the petitioner at the time of his trial. The evidence relating to those statements was known or available at the time of trial and it is not now newly discovered evidence.

9

"Newly discovered evidence must consist of facts which were unknown at the time of trial, and it must appear [that] the defendant or defense counsel could not have known those facts by the use of [due] diligence." *Coleman v. State,* 718 So.2d 827, 829 (Fla.App.1998). "Due diligence means doing everything reasonable . . ." *Williams v. Commission,* 41 Conn. App. 515, 528 (1996).

The argument of the petitioner in his brief that Detective Sweeney had evidence of Ruiz's untruthfulness in his statements in 1991, has not been proven by the petitioner.   This court is not persuaded that Detective Sweeney's knowledge constituted new evidence that would probably result in a different verdict at a new trial, or that an injustice has been done. *Lombardo v. State* 172 Conn. at 391 citing *Prodlik v. State* 131 Conn. 686.

The petitioner has failed to sustain the burden of proving the claims made in the first count. *Lubesky v. Bronson,* 213 Conn. 97, 110 (1989).  Ruiz has not testified in this habeas proceeding.  His testimony in the trial of the petitioner was credible because it was under oath and subject to cross examination by the attorney for the petitioner.  The testimony was also consistent with other credible evidence including Morant's confession to his involvement with the petitioner.  The statements given to the F.B.I. in 1996, by Ruiz while he was incarcerated, were given under circumstances that are unlikely to be reliable. *Smith v. State,* 139 Conn. 249, 252-53 (1952).  The 1996 recantations were not credible, and therefore, the petitioner has failed to prove Ruiz testified falsely in 1995.

Appendix G at 41-45.

On appeal to the Connecticut Appellate Court, the petitioner only pursued those allegations that pertained to former New Haven police detective Michael Sweeney's testimony at Stefon Morant's post-conviction proceeding.  Specifically, he framed this issue, as follows:

Whether the habeas court abused its discretion in ruling that former Detective Michael Sweeney's testimony was insignificant, failed to prove evidence of Ovil Ruiz untruthfulness in his statements, was not suppressed, and did not constitute newly discovered evidence and whether the habeas

court applied the proper standard of review concerning the "undisclosed evidence" of Michael Sweeney's testimony?

Appendix H at 1.

The petitioner also raised a claim, not at issue in these proceedings, that the habeas court should have applied an adverse inference against the respondent because Ovil Ruiz asserted his privilege against self-incrimination when called to testify at the petitioner's habeas trial.  The Connecticut Appellate Court refused to review the merits of these claims because the petitioner (1) failed to provide an adequate record when he deliberately chose not to file the transcripts of the state habeas corpus proceeding and (2) failed to brief the issue of the denial of certification to appeal.

## 2.    The petitioner's claim of "newly discovered evidence" of perjury is defaulted

Before the state habeas court, the petitioner presented several variations on his claim that the state relied upon perjured testimony.  On appeal in the Connecticut Appellate Court, however, he limited his claim of "newly-discovered evidence" of perjury to the testimony of former-detective Michael Sweeney's that (1) Ovil Ruiz "originally denied knowing anything about the murders" and (2) the information Ruiz provided to the police actually came from former detective Vincent Raucci and then was "parrotted" back by Ruiz.  Appendix H at 3.  The state habeas court determined that such testimony did not constitute "newly discovered evidence."   Specifically, it found that "[t]he evidence relating to [Ovil Ruiz'] statements was known or available at the time of trial and it is not now newly discovered evidence" and "the alleged evidence was available by due diligence to the defense."  Appendix G at 44, 47.  On appeal, the petitioner challenged those findings.

11

As explained by the state habeas court, under Connecticut law, "[f]alse testimony may only be the basis of a new trial when: '(a) the court is reasonably well satisfied that the testimony given by a material witness is false; (b) that without it the jury might have reached a different conclusion; (c) that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it. . . .'" *Prudlik v. State,* 131 Conn. 682, 687 (1945); *Talton v. Warden,* 33 Conn.App. 171, 177 (1993)." Appendix G at 44. "'Newly discovered evidence must consist of facts which were unknown at the time of trial, and it must appear [that] the defendant or defense counsel could not have known those facts by the use of [due] diligence." *Coleman v. State,* 718 So.2d 827, 829 (Fla. App.1998). "Due diligence means doing everything reasonable. . . .' *Williams v. Commission,* 41 Conn.App. 515, 528 (1996)." Appendix G at 45.

In his brief to the Appellate Court, the petitioner asserted that Sweeney's testimony established that: (1) Sweeney had evidence of Ruiz' untruthfulness, (2) the information that Raucci provided to Ruiz was significant, and (3) no reports concerning these matters were filed. Appendix H at 4. He then claimed that "[t]he habeas court erred in finding that the plaintiff-appellant had not proven that Sweeney had evidence of Ruiz' untruthfulness as reported, and that the information was insignificant. The court's findings are not supported by the fact's shown" and "[t]he habeas court's findings' that these facts were available is unsupported by the evidence and constitutes error." (Emphasis omitted.) Appendix H at 2, 4. Thus, he alleged that the habeas court's findings were not supported by any evidence.

Under Connecticut law to hold that a finding of fact is clearly erroneous, the reviewing court first must determine that "'there is no evidence in the record to support it

12

. . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' . . ." (Citations omitted.)  *Orcutt v. Commissioner of Correction*, 284 Conn. 724, 742, 937 A.2d 656 (2007).  The "validity of any claim that the trial court's decision is not supported by the evidence may be tested only by reference to the record together with the transcripts and exhibits filed in the case. . . ."  (Citation omitted.)  *McGaffin v. Roberts,* 193 Conn. 393, 409, 479 A.2d 176 (1984) (court refused to review claim where no transcript had been filed); *Calo-Turner v. Turner,* 83 Conn. App. 53, 56, 847 A.2d 1085 (2004) (court refused to review claim where defendant only provided court with excerpts of his testimony and failed to file complete trial transcript); *Pleines v. Franklin Construction Company, Inc.,* 30 Conn. App. 612, 615, 621 A.2d 759 (1993); *In re Lea T.,* 15 Conn. App. 455, 457, 544 A.2d 1245 (1988) (where appellant only filed transcripts of three of the seven witnesses presented, appellate court could not review a claim that the lower court's decision was not supported by the evidence).  Under Connecticut law, a claim of error cannot be predicated on an *assumption* that the trial court acted incorrectly.  *In re Lea T.,* 15 Conn. App. at 458.  In other words, "[w]here the factual basis of the trial court's decision is attacked, [the reviewing court is] called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (Citations omitted; internal quotation marks omitted.)  *Biggs v. Warden, State Prison*, 26 Conn. App. 52, 56, 597 A.2d 839 (1991).  *See also Evans v. Commissioner of Correction*, 37 Conn. App. 672, 677, 657 A.2d 1115 (1995); *Siano v. Warden, State Prison,*

13

31 Conn. App. 94, 95, 623 A.2d 1035 (1993).  Thus, when an appellant chooses not to file all necessary transcripts, he does so at his own peril.

Here, in order for the Appellate Court to find that the state habeas court's findings were clearly erroneous, it would have to review all of the evidence presented to the state habeas court–*i.e.*, the "whole record."[2]  Indeed, without reviewing the transcripts of a proceeding at which witnesses testified, the Court could not find an absence of evidence. Even if hindsight reveals that the transcripts contained no such evidence, the petitioner's failure to file them denied the Connecticut Appellate Court the opportunity to (1) conduct a review for evidence that would support the habeas court's findings and (2) make the determination that such evidence exists or is absent.  Because the petitioner failed to file the transcripts, it denied the Appellate Court of the opportunity to review the entire record and to possibly find that no evidence supported the findings of the habeas court.  Thus, the court had no choice but to find that the record provided by the petitioner was inadequate. Certainly, the federal appellate courts would apply the federal counterpart of the state rule in similar circumstances.  *See Beard v. Kindler*, 558 U.S. __, 2009 WL 4573277 at *6 (2009) ("it would seem particularly strange to disregard state procedural rules that are substantially similar to those to which we give full force in our own courts"); *Coleman v. Thompson*, 501 U.S. 722, 746, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("a proper respect

---

[2]        "A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Citations omitted; quotation marks omitted.) *Crowell v. Danforth*, 222 Conn. 150, 156, 609 A.2d 654 (1992); *State v. Lockhart*, 60 Conn. App. 119, 758 A.2d 857 (2000); *State v. Treat*, 38 Conn. App. 762, 769-70, 664 A.2d 785 (1995).

for the states [requires] that federal courts give to the state procedural rule the same effect they give to the federal rule").

In summary, because the petitioner challenged the factual findings of the state habeas court as unsupported, it was necessary that he provide the Appellate Court with the entire record to substantiate his claim. Because he did not do so, the court was unable to decide whether the habeas court's findings were clearly erroneous and, therefore, could not resolve his claim that "[t]he habeas court's findings' that these facts were available is unsupported by the evidence and constitutes error." (Emphasis omitted.) Appendix H at 4. As a result, his claim is defaulted. Absent a showing of good cause to excuse that default and actual prejudice, the petitioner is not entitled to review of, or relief upon, this defaulted claim and it must be dismissed.

### C.    The Petitioner Cannot Obtain Relief On His Second Ground for Relief

The petitioner also claims that the state suppressed information in the possession of former Detective Michael Sweeney regarding former Detective Raucci's conduct in allegedly providing a witness named Ovil Ruiz with details of the crime. Contrary to the petitioner's allegations, the state habeas court determined that he had not demonstrated that Sweeney's information was suppressed. On appeal, the petitioner challenged the findings of the habeas court on the ground that they lacked evidentiary support. Because he failed to file a complete record of the proceedings before the state habeas court, the Appellate Court was unable to verify those claims. As a result, this ground for relief is defaulted and must be dismissed.

15

### 1.    Procedural history of claim

In the second count of his state habeas corpus petition, the petitioner asserted that the State suppressed exculpatory evidence that (1) Ruiz provided the police with false information pertaining to the unrelated shooting of Javier Torres, (2) Ruiz provided the police with false information pertaining to the unrelated murder of Jacqueline Shaw, and (3) on January 14, 1991, Ruiz made an inconsistent statement to a New Haven police detective, Michael Sweeney, and (4) on January 14, 1991, Detective Vincent Raucci provided Ruiz with information about the Fields/Turner murders which Ruiz then "parroted back" in a sworn statement.  Appendix G at 7-14.  The respondent denied these allegations and also asserted that the petitioner's claim was defaulted *if* the petitioner was aware of the "suppressed" evidence or that evidence was "reasonably available" through the exercise of due diligence, ***and*** the petitioner failed to raise his claim at trial or on direct appeal.  Appendix G at 20-21.  In reply, the petitioner denied that he was in default and asserted that his trial attorney had no knowledge of the allegedly suppressed evidence.

After hearing the merits of the petitioner's claims, the state habeas court denied relief, as follows:

> The final claim alleged by the petitioner in [Count Two] is that the State failed to disclose exculpatory information to the defense relating to the statement taken from Ovil Ruiz on January 14, 1991.  He alleges Detective Raucci gave false information to Ruiz and Detective Sweeney failed to disclose to the defense that Ruiz was untrustworthy.
>
> * * *
>
> The testimony of Detective Michael Sweeney, who was unavailable to testify in this matter, was admitted by filing of a transcript of his testimony on

October 25, 1999.  That transcript discloses the only information Detective Raucci allegedly disclosed to Ruiz prior to his statement on January 14, 1991, related to an apartment on Howard Avenue; the color of the buildings and the petitioner's car was a BMW. Other insignificant facts were mentioned as part of the questioning technique.  The petitioner has failed to prove that any critical information was disclosed by Detective Raucci, or that he provided any false information to Ruiz.

The claim of the petitioner that exculpatory information was not provided to the defense prior to the trial in 1995, has not been proven.  This court finds not only was all exculpatory evidence furnished to the defense, but also the alleged evidence was available by due diligence to the defense, and the petitioner was obliged to raise his claims before the trial court or the Appellate Court.  The petitioner has failed to sustain the heavy burden to establish "that the prosecution suppressed evidence."  State v. McIntyre, 242 Conn. 318, 323 (1997).

Appendix G at 46-47.

In his reply brief, the petitioner asserted that "[t]he state totally ignores the right adored and guaranteed to the appellant-plaintiff in this matter"–*i.e.*, his right to the disclosure of exculpatory evidence under *Brady v. Maryland*.  Appendix J at 1.

17

### 2. The petitioner defaulted his claim under *Brady v. Maryland* in the state courts by failing to file necessary transcripts[3]

"'There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'  *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)."  *Boyette v. Lefevre*, 246 F.3d 76, 89 (2d Cir. 2001).  On appeal, the petitioner challenged the habeas court's "findings that the information Sweeney possessed was available to defense at or prior to trial, and that the exculpatory information was furnished to the defense is unsupported by the evidence and the state's admissions in its brief filed August 30, 1991."  Appendix H at 7.  He also raised the question "How could the habeas court find that it, (Sweeney's information) was given to defense prior to trial, when if fact the state's attorney never knew of it as well."  *Id.* at 8.  Thus, the petitioner attacked the state habeas court findings as to his *Brady* claim as well as his claim of "newly discovered evidence" of perjury.  In so doing, he presented the Appellate Court with the type of claim that requires the court to review the entire record.  Thus, by failing to provide

---

[3]        In a telephone conference of September 16, 2009, this Court stated, "I would like to know why the record provided to the appellate court was insufficient to permit review of the *Brady* claim that was rejected by the habeas trial court."  Essentially, the Appellate Court was required to review the entire record in order to determine whether any evidence existed to support the habeas court's decision.  *If it found no such evidence*, it then could determine whether the habeas court's findings were clearly erroneous.  It could not reach this second step, however, without first taking inventory of all of the evidence.  By failing to provide a record that proved to the Appellate Court that no other evidence existed, if that was the case, the petitioner denied the Appellate Court of its ability to find that the habeas court's findings were clearly erroneous.

the entire record, the petitioner failed to comply with Connecticut Practice Book § 61-10 which makes the appellant responsible for providing "an adequate record for review."

Although the petitioner challenged the state habeas court's findings, he did not file the transcripts of the state habeas trial.  Rather, he deliberately chose to rely solely upon the testimony given by former-detective Sweeney at Stefon Morant's post-conviction proceeding.  Under Connecticut law, however, in order to hold that a factual finding is erroneous, the reviewing court first must determine that "'there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' . . ."  (Citations omitted.)  *Orcutt v. Commissioner of Correction*, 284 Conn. 724, 742, 937 A.2d 656 (2007).  The "validity of any claim that the trial court's decision is not supported by the evidence may be tested only by reference to the record together with the transcripts and exhibits filed in the case. . . ."  (Citation omitted.)  *McGaffin v. Roberts,* 193 Conn. 393, 409, 479 A.2d 176 (1984) (court refused to review claim where no transcript had been filed); *Calo-Turner v. Turner,* 83 Conn. App. 53, 56, 847 A.2d 1085 (2004) (court refused to review claim where defendant only provided court with excerpts of his testimony and failed to file complete trial transcript); *Pleines v. Franklin Construction Company, Inc.,* 30 Conn. App. 612, 615, 621 A.2d 759 (1993); *In re Lea T.,* 15 Conn. App. 455, 457, 544 A.2d 1245 (1988) (where appellant only filed transcripts of three of the seven witnesses presented, appellate court could not review a claim that the lower court's decision was not supported by the evidence).  A claim of error cannot be predicated on an *assumption* that the trial court acted incorrectly.  *In re Lea T.,* 15 Conn. App. at 458.  In

other words, "[w]here the factual basis of the trial court's decision is attacked, [the reviewing court is] called upon to determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ."  (Citations omitted; internal quotation marks omitted.)  *Biggs v. Warden, State Prison*, 26 Conn. App. 52, 56, 597 A.2d 839 (1991).  *See also Evans v. Commissioner of Correction*, 37 Conn. App. 672, 677, 657 A.2d 1115 (1995); *Siano v. Warden, State Prison,* 31 Conn. App. 94, 95, 623 A.2d 1035 (1993).  Thus, when an appellant chooses not to file all necessary transcripts, he does so at his own peril.

Here, in order for the Appellate Court to find that the state habeas court's findings were clearly erroneous, it would have to review all of the evidence presented to the state habeas court–*i.e.*, the "whole record."  Indeed, without reviewing the transcripts of a proceeding at which witnesses testified, the Court could not find an absence of evidence. Even if hindsight reveals that the transcripts contained no such evidence, the petitioner's failure to file them denied the Connecticut Appellate Court the opportunity to conduct such a review and make that determination.  In other words, by failing to provide a record that proved to the Appellate Court that no other evidence existed, the petitioner denied the Appellate Court of its ability to hold that the habeas court's findings were clearly erroneous. Absent such an opportunity, the court had no choice but to find that the record provided by the petitioner was inadequate.

In summary, the petitioner challenged the habeas court's "findings that the information Sweeney possessed was available to defense at or prior to trial, and that the exculpatory information was furnished to the defense is unsupported by the evidence and

20

the state's admissions in its brief filed August 30, 1991." Appendix H at 7. He also raised the question "How could the habeas court find that it, (Sweeney's information) was given to defense prior to trial, when if fact the state's attorney never knew of it as well." *Id.* at 8. Given that the petitioner attacked the state habeas court findings as to his *Brady* claim, the Appellate Court could not review his claim based upon the incomplete record that he provided. As a result, it dismissed his appeal without reviewing the merits of his claim. Absent a showing of good cause to excuse this default and actual prejudice, this Court must respect the Connecticut court's imposition of its procedural rules and refuse to review this claim.

### 3. The petitioner defaulted his claim under *Brady v. Maryland* in the state courts by failing to brief the denial of certification

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' . . ." (Citation omitted.) *Beard v. Kindler,* 558 U.S. ___, 2009 WL 4573277 at *2 (2009). As in the federal courts,[4] Connecticut state law provides that habeas petitioners have no right to appeal the denial of a petition. *See Beard v. Kindler*, 2009 WL at *6 ("it would seem particularly strange to disregard state procedural rules that are substantially similar to those to which we give full force in our own courts"); *Coleman v. Thompson*, 501 U.S. 722, 746, 111 S.Ct. 2546, 115 L.Ed.2d 640

---

[4]        Under 28 U.S.C. § 2253(c)(1), "unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court. . . ."

(1991) ("a proper respect for the states [requires] that federal courts give to the state procedural rule the same effect they give to the federal rule").  At the time of the petitioner's appeal to the Connecticut Appellate Court, Connecticut General Statutes § 52-470(b) provided that:

> *No appeal* from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or in behalf of one who has been convicted of a crime *may be taken* unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and *the judge so certifies.*

(Emphasis added.)

Although the Connecticut Supreme Court has determined that the certification requirement is not jurisdictional, an appeal from the denial of certification may not proceed unless such denial constitutes an abuse of discretion.  *Simms v. Warden,* 230 Conn. 608, 615, 646 A.2d 126 (1994).  A petitioner seeking to appeal despite the denial of certification bears the burden of proving such an abuse.  *Simms*, 230 Conn. at 615-16.  Thus, "[f]aced with a habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constitutes an abuse of discretion."  *Id.* at 612.  "If the petitioner succeeds in surmounting that hurdle, the petitioner then must demonstrate that the judgment of the habeas court should be reversed on its merits."  *Id.*  In other words, an uncertified appeal requires a two-part showing.  *Id.*

To show an abuse of discretion, the petitioner must demonstrate "'that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.'

22

. . ." (Citations omitted.)  *Id.* at 616.  In attempting to show an abuse of discretion, petitioners may have to discuss federal constitutional law.  Thus, if a petitioner briefs the issue but does not convince the appellate tribunal that an abuse of discretion exists, the certification requirement will not serve as an independent and adequate state procedural bar.  The complete failure to even mention the denial of certification and the accompanying failure to brief the issue, however, is a default independent of federal law.

Here, the petitioner never mentioned the denial of certification in his brief to the Appellate Court and did not even attempt to demonstrate that such denial of certification constituted an abuse of discretion.  *See* Appendix H.  Although the respondent noted this failure in its brief on appeal; Appendix I; the petitioner again ignored it in his reply brief. Appendix J.  Under Connecticut law, the failure to address the issue is dispositive of a habeas appeal where certification was denied because "'the mere allegation of a violation of a constitutional right is insufficient to meet the initial hurdle of proving an abuse of discretion when the habeas court has denied certification to appeal.' . . ."  (Citation omitted.)  *Reddick v. Commissioner of Correction*, 51 Conn. App. 474, 477, 722 A.2d 286 (1999).  When a petitioner does not brief this threshold issue, he "fails to establish that the habeas court abused its discretion and cannot, therefore, properly obtain appellate review of the habeas court's decision."  *Reddick*, 51 Conn. App. at 477.  Both the Connecticut Appellate Court and Supreme Court "have consistently held that an issue that is not adequately briefed will not be addressed on appellate review."  *State v. Gaines,* 36 Conn. App. 454, 460, 651 A.2d 1297 (1994); *State v. Person,* 20 Conn. App. 115, 130, 564 A.2d 626 (1989); *State v. Fiocchi,* 17 Conn. App. 326, 327 n.3, 553 A.2d 181 (1989).

23

Thus, when the petitioner did not even address the issue, he failed to establish that he was entitled to an appeal despite the statutory prohibition of General Statutes § 52-470(b) against uncertified appeals–*i.e.*, "No appeal . . . may be taken . . . unless the appellant . . . petitions the judge before whom the case was tried . . . to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."  Given that the petitioner did not give the Appellate Court a single reason why it should proceed despite the lack of certification, the court could not justify reviewing the merits of his claims.  Thus, its only reasonable option was to dismiss the uncertified appeal.  For this reason, the petitioner's failure to even mention the lack of certification--as well as his failure to brief the abuse of discretion issue--resulted in the procedural default of his claims.  As a result, the first and second grounds for relief must be dismissed.

**D,    The Remaining Issues**

The respondent does not possess the exhibits admitted during the state habeas proceeding.  In an effort to obtain copies of those exhibits, counsel for the respondent has contacted the Clerk's Office of the New Haven Superior Court.  They represent that those exhibits cannot be located.  The respondent is hesitant to reconstruct these exhibits unilaterally.  Thus, before these reconstructed exhibits may be filed, the parties must agree as to their accuracy and completeness.  Until that reconstruction is completed, any briefing of the merits of the petitioner's claims cannot be properly presented to this Court.

24

## II.    CONCLUSION

For the reasons discussed above, the petitioner is not entitled to federal habeas corpus relief on the first two claims raised in his petition.  As a result, those claims must be dismissed.

Respectfully submitted,

RESPONDENT--COMMISSIONER OF CORRECTION

By:    ____/s/_____
JO ANNE SULIK
Senior Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
(860) 258-5887
(860) 258-5968 (fax)
Fed. Bar. No. ct 15122

## **CERTIFICATION**

I hereby certify that a copy of this document is being maile to Attorney Brett Dignam,

The Jerome N. Frank Legal Services Organization, Yale Law School, P.O. Box 209090,

New Haven, Connecticut 06520-9090 on December 17, 2009.


                    /s/
                  JO ANNE SULIK
                  Senior Assistant State's Attorney