# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

SCOTT T. LEWIS,

               Petitioner,

v.

COMMISSIONER OF CORRECTIONS,

             Respondent.

3:03-cv-00196 (CSH)

## RULING ON RESPONDENT'S PROCEDURAL OBJECTIONS

HAIGHT, Senior District Judge:

Petitioner Scott T. Lewis is currently incarcerated by the State of Connecticut following his conviction by a state court jury of murder in 1995. Lewis challenged his conviction in a number of unsuccessful proceedings in the Connecticut courts, and then filed this federal application for habeas corpus relief pursuant to 28 U.S.C. § 2854. In this federal habeas application, Petitioner's attack upon his state conviction rests on three claims, discussed in detail in Part I, but summarized for introductory purposes as (1) the *Brady* claim; (2) the perjury claim; and (3) the third-party confession claim.

In its responses to Lewis's habeas Petition, the Respondent State contends that the first two of these claims are barred by Lewis's failure to exhaust state remedies and by his procedural default under state practices. It follows, the State contends, that this federal Court cannot reach the merits of those claims. As to the third claim, the State urges neither exhaustion nor procedural default, and acknowledges that the claim is ripe for a hearing on the merits.

-1-

In these circumstances, this Ruling considers only Respondent's contentions that the first two claims are barred.  On the issues thus drawn, the parties have submitted able briefs and the Court has heard oral argument.  For the reasons that follow, the Court holds that Petitioner's first (*Brady*) claim is not barred, and his first (perjury) claim is barred.  The Court neither expresses nor intimates a view about the merits of any of the claims.

I.      **Background**

Petitioner is currently incarcerated in the custody of the Connecticut Department of Corrections.  In 1995, he was convicted in state court of two counts of murder and two counts of felony murder.  Specifically, he was convicted of murdering two drug dealers, Ricardo Turner and Lamont Fields, in October 1990, as was an associate, Stefon Morant.  At Petitioner's trial, the state presented the testimony of another drug dealer, Ovil Ruiz.  Ruiz testified *inter alia* that he drove Petitioner and Morant to and from the place where the murders were committed, that Petitioner and Morant's motive in killing the victims was to steal drugs and money from them, and that he saw Petitioner dispose of the gun used in the murders.  On direct appeal, the Connecticut Supreme Court vacated the felony murder convictions and upheld the murder convictions.  *State v. Lewis*, 245 Conn. 779 (1998) (*Lewis I*).

In October and November 1999, the Connecticut Superior Court held evidentiary hearings (the "Morant 1999 hearings") on a petition for a new trial by Lewis's co-defendant Morant, following the disclosure of an FBI report that contained interviews with Ruiz in which he recanted his testimony at Petitioner's trial.  At those hearings, Detective Michael Sweeney gave testimony (the "Sweeney testimony") that assertedly cast doubt on the truthfulness of Ruiz's testimony at Petitioner's

trial. However, the Superior Court denied Morant's petition, holding, *inter alia*, that Sweeney's testimony did not lead to the conclusion that Ruiz's trial testimony on the important point, the identity of the killers, was false. *Morant v. State of Connecticut*, 2000 WL 804695 (Conn. Super. Ct. June 5, 2000).

On January 9, 2001, Petitioner filed an amended habeas petition in Connecticut Superior Court alleging the following three claims: (1) newly discovered evidence that a trial witness committed perjury; (2) the state's failure to provide the defense with exculpatory evidence; and (3) newly discovered evidence of alibi testimony. The judge in the habeas trial denied the petition. *Lewis v. Warden*, No. CV-99-0424021-S, 2001 WL 1203354, at *1 (Conn. Super. Ct. Sept. 17, 2001) (*Lewis II*). Following this denial, and in accordance with Connecticut practice, Petitioner filed a petition for certification to appeal the habeas denial to the Connecticut Supreme Court on September 26, 2001. That petition was denied without comment on October 22, 2001.

Petitioner then filed an uncertified appeal to the Connecticut Appellate Court on November 13, 2001, which was denied on November 19, 2002. *Lewis v. Comm'r of Corr.*, 73 Conn. App. 597 (2002) (*Lewis III*). Following this denial, Petitioner sought review by the Connecticut Supreme Court through a petition for certification on November 22, 2002. The Connecticut Supreme Court denied certification on January 14, 2003 without discussion. *Lewis v. Comm'r of Corr.*, 262 Conn. 938 (2003) (*Lewis IV*).

Petitioner then filed this federal habeas petition on January 29, 2003, asserting three claims: (1) he was denied due process because exculpatory evidence was suppressed (the "*Brady* claim"); (2) his conviction was based on perjured testimony (the "perjury claim"); and (3) his right to present a defense was violated because a third-party confession was not admitted at trial (the "third-party

confession claim").  On July 31, 2003, Respondent filed an Answer to Petition for Writ of Habeas

Corpus (the "Answer") [Doc. 14]  which, *inter alia*, made the procedural objections to this Court's

consideration of the *Brady* and perjury claims that are considered in this Ruling.

## II.     Discussion

Respondent objects to this Court's consideration of two of Petitioner's claims, the *Brady* and

perjury claims, arguing that he (1) failed to exhaust the claims before the Connecticut Supreme

Court, and (2) procedurally defaulted the claims when he appealed the habeas court's dismissal of

his petition to the Connecticut Appellate Court.  Respondent argues that these alleged procedural

failings by Petitioner, who was appearing *pro se* throughout his state habeas proceedings, prohibit

this Court from hearing the merits of the *Brady* and perjury claims.[1]  Respondent does not argue that

this Court is prohibited from hearing the merits of the third-party confession claim, which is

therefore not discussed in this Ruling.  The Court addresses each objection in turn.

### A.     Failure to Exhaust

#### 1.     Legal Standard

Exhaustion of state remedies is a requirement of the federal habeas statute for state prisoners

challenging their custody in federal court. 28 U.S.C. § 2254(b). To satisfy the requirement, the

petitioner must show that the federal claims have been "fairly presented" to the state courts. *Daye*

*v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982).  The Second Circuit has established a two-

part inquiry to determine whether a petitioner has properly exhausted his federal claims in state

court.  The petitioner must have (1) "set forth in state court all of the essential factual allegations

---

[1]  The Court is cognizant of its duty to liberally construe *pro se* pleadings under both
federal and state law. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Oliphant v. Comm'r of
Corr.*, 274 Conn. 563, 569 (2005).

asserted in his federal petition," and (2) "placed before the state court essentially the same legal doctrine he asserts in his federal petition." *Id.* at 191-92.   A petitioner may meet this threshold without citing "book and verse on the federal constitution." *Picard v. Connor*, 404 U.S. 270, 278 (1971).  There are several ways by which a petitioner may meet the "fair presentment" requirement, including:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

## 2.     Analysis

Respondent argues that Petitioner failed to present the Connecticut Supreme Court with either his *Brady* or perjury claims when he petitioned for certification after the denial of his appeal in *Lewis III*.  Resp. Br. at 3-7.  Respondent points to Lewis's November 22, 2002 "Petition for Certification to the Supreme Court," which is Appendix K to Respondent's Resubmission [Doc. 109].  It is appropriate to focus upon that document, which I will call "the November 2002 Petition," because the parties agree it is determinative of whether Lewis's present federal claims were "fairly presented" to the Connecticut courts for exhaustion purposes.  These exchanges occurred between the Court and Petitioner's counsel during the oral argument:

> THE COURT: So, is it your view that it is the contents of the petition for certification to the Supreme Court, November 22, 2002, which really governs the exhaustion analysis?  Is that so, rather than the Supreme Court's opinion in 1998?  I'm only talking exhaustion now.

> MS. WASHINGTON [counsel for Petitioner] Correct. . . . I will note that exhaustion of the third claim, the one regarding third-party culpability, does relate back to the direct appeal. . . . Therefore, the petition for certification, the ne from November 22nd of 2002, is the only document at issue now before the court, regarding exhaustion. . . .

> THE COURT: All right.  So as far as exhaustion is concerned, the alpha and omega of it is found in the petition for certification?

MS. WASHINGTON: Correct.

Transcript, Hearing on Petition for Habeas Corpus Before the Honorable Charles S. Haight, Jr., October 26, 2011, at 29-31.

Respondent relies upon the Supreme Court's holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  Petitioner's November 2002 Petition to the Connecticut Supreme Court, in Respondent's view, does not sufficiently identify either the *Brady* or perjury claims as questions for review.  Respondent's Second Supplemental Memorandum of Law ("Resp. Br.") at 6-7.  I do not agree.

Petitioner clearly stated in his November 2002 Petition "**that he had been denied a Federal Constitutional Right.**"  *Id.* at 6.  (emphasis in the original).  Further, the issues that Petitioner presented under "Issues Presented for Review" referred to "evidence of Ovil Ruiz's untruthfulness in his statements," and raised the issues of whether the Sweeney testimony "was not suppressed" and whether it was "undisclosed evidence."  November 2002 Petition at 1-2.  The references to untruthful statements and "undisclosed evidence" alert the reader to potential federal constitutional violations.

-6-

Later in that Petition, Petitioner states that Sweeney "came forward with 'exculpatory evidence' that has been suppressed prior to the criminal trial, direct appeal and the investigation by the Federal Bureau of Investigation." *Id.* at 4 (emphasis in the original). In the November 2002 Petition, Lewis summarized the claims he made to the state habeas court as "alleging his conviction was based on perjured testimony, the State suppressed exculpatory material and actual innocence." *Id.*

A fair reading of Lewis's *pro se* November 2002 Petition demonstrates that the document fairly presented to the Connecticut Supreme Court the essential factual allegations that support Lewis's federal claims of a *Brady* violation and a conviction obtained by perjured testimony. I hold that the contents of the November 2002 Petition satisfy the Second Circuit's criteria articulated in *Daye.* Consequently Lewis has satisfied his statutory obligation to exhaust these two federal claims in state court,[2] and Respondent's contention based on exhaustion is rejected.

**B.      Procedural Default**

**1.      Standard of Review**

"A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment ... unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005), *quoting Coleman v. Thompson*, 501 U.S. 722, 729, 750

---

[2] Further, the Court adopts Petitioner's counsel's argument that Respondent has judicially admitted that Petitioner exhausted his *Brady* claim in Resp. Br. at 14 (stating "Here, only the petitioner's *Brady* claim regarding Sweeney's information has been raised to the Connecticut Appellate Court and the Connecticut Supreme Court") and in the Answer at ¶ 7.

(1991). "In particular, a state court procedural default will bar federal habeas review when 'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" *Id.* at 294, *quoting Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996). Further, "only a firmly established and regularly followed state practice may be interposed by a State to prevent subsequent review by [a federal court] of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

### 2.     Analysis

Respondent argues that Petitioner procedurally defaulted on his *Brady* and perjury claims because on his appeal to the Connecticut Appellate Court, *i.e.*, *Lewis III*, he "(1) failed to provide an adequate record when he deliberately chose not to file the transcripts of the state *habeas corpus* proceeding and (2) failed to brief the issue of the denial of certification of appeal." Resp. Br. at 11.

### a.     Failure to File Transcript

Respondent argues that Petitioner should be procedurally barred from asserting his *Brady* and perjury claims because he did not file the complete transcript of his habeas trial with the Connecticut Appellate Court.  The Appellate Court explicitly based its dismissal on the failure to file that transcript. *Lewis III* at 598.  According to the Appellate Court, "[u]nder those circumstances, we can only speculate as to the existence of a factual predicate for the habeas court's rulings." *Lewis III* at 599.  It held that this default was too serious to fall within the latitude granted to pro se parties. *Id.*  Petitioner argues that no appellate-court rule required him to file a transcript, especially since the habeas court—in *Lewis II*—had only discussed documentary evidence.  Petitioner's Updated Response to Respondent's Supplemental Memorandum of Law ("Pet. Br.") at 40-45.

Under Rule 61-10 of the Connecticut Rules of Appellate Procedure, it is the appellant's

-8-

responsibility to provide an adequate record for review.  Under Rule 63-8, the appellant must file those portions of the transcript of the trial court proceeding that he deems necessary for review. However, under Rule 63-4(a)(3), the appellant may file a statement that no transcript is necessary. Petitioner did not file any part of the transcript, but did file a letter saying that no transcript was necessary.

Petitioner failed to comply with the adequate-record rule only if the transcript was necessary to provide the Appellate Court with an adequate record for review.  The Appellate Court held that a full transcript was required.  However, that does not end the present analysis, because the Appellate Court's inaccurate characterization of the issues leaves this Court to determine whether the transcript was necessary for review of the *Brady* and perjury claims.  The Appellate Court, adopting its characterization of the issues directly from Respondent's appellate brief, described the issues raised as whether the court acted improperly "(1) in concluding that the testimony of Michael Sweeney, a police detective, did not constitute newly discovered evidence and (2) in failing to draw an adverse inference against the respondent commissioner of correction when Ovil Ruiz, a witness at the habeas trial, invoked his fifth amendment privilege against compelled self-incrimination."  *Lewis III* at 597. It is not clear whether the Appellate Court was aware that Petitioner had also raised the *Brady* and perjury issues on appeal or whether it was misled by Respondent's brief.  Certainly, Petitioner had raised those issues in his appeal.  *See, e.g.,* Appeal Brief of the Plaintiff-Appellant With Attached Appendix,[3] *Statement of Issues* (unpaginated).

With respect to the *Brady* claim, it is possible that the Appellate Court could have reversed

---

[3] A copy of that brief ("App. Br.") constitutes Appendix H to Respondent's Resubmission [Doc. 109].  A copy of Petitioner's Reply Brief of the Appellant – Plaintiff With Attached Appendix ("Reply Br.") constitutes Appendix J to Respondent's Resubmission.

the habeas court solely as a matter of law, for which it would not need the habeas trial transcript. The habeas court's holding on the *Brady* claim was as follows:  "This court finds that not only was all exculpatory evidence furnished to the defense, but also the alleged evidence *was available by due diligence to the defense*, and the petitioner was obliged to raise his claims before the trial court or the Appellate Court." *Lewis II* at 7 (emphasis added).  Petitioner argued that the imposition of a due-diligence requirement was legal error.  App. Br. at 8-9.  "In *United States v. Bagley*, 473 U.S. 667 (1985)– the court held that *regardless* of request, favorable evidence is material, and Constitutional error results from its suppression by the government." *Id.* at 8 (emphasis in original).  Petitioner was correct. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004) (laying out the essential elements of a *Brady* claim).  Petitioner supplied a copy of the habeas court's Memorandum of Decision, which might have enabled the Appellate Court to decide a purely legal question.

However, that conceptual possibility encounters the difficulty resulting from the habeas court's failure to make it clear what exactly it was holding when it dismissed the *Brady* claim.  The habeas court stated that "[t]he claim of the petitioner that exculpatory evidence was not provided to the defense prior to the trial in 1995, has not been proven." *Lewis II* at *3.  In context, it seems likely, though not certain, that the court's finding was that the information in question was not exculpatory.  On the other hand, the clause stating that the evidence was available to the defense by due diligence seems to imply that the evidence was, or might have been, exculpatory, at least as impeachment evidence, and Petitioner's problem was that he had not exercised due diligence to obtain it.

Likewise, the Appellate Court did not make it clear that it was finding that the *Brady* claim could not be decided as a matter of law.  In fact, it is not clear that the Appellate Court was aware

of the *Brady* claim or Petitioner's argument against it, a point that is the more telling because in this respect that Court followed Respondent's incomplete description of the issues.  Without a clear explanation of the basis for the decisions of either the habeas court or the Appellate Court on the *Brady* claim, this Court cannot be certain whether the Appellate Court could have ruled on the *Brady* claim as a matter of law with the materials supplied, thereby absolving Lewis of any adequate-record transgression.

In the absence of such clarity, this Court declines to hold that Petitioner's *Brady* claim was procedurally defaulted by failure to comply with the adequate-record rule.

Moreover, the adequate-record rule constitutes an adequate ground to bar federal review only if the Appellate Court "clearly and expressly" stated that its decision rested on that rule, *Harris v. Reed*, 489 U.S. 255, 269 (1989), and the rule was "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).  Although the Appellate Court clearly rested its decision about the claims it did mention on the adequate-record rule, it is not absolutely clear that it applied the adequate-record rule to the *Brady* claim or, if it was not aware of the *Brady* claim, whether it would have decided differently if *had* been aware of that claim.  Nor has Respondent established that the adequate-record rule was "firmly established and regularly followed" in the case of a claim that arguably raises pure questions of law.  *See Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) ("the question is whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case").

For these reasons, Petitioner's *Brady* claim is not defaulted.  I reach a different conclusion with respect to the perjury claim.  Although the Appellate Court did not mention the perjury claim, its application of the adequate-record rule would certainly have applied as much to the perjury claim

as to the claims it mentioned.  The habeas court's ruling on the perjury claim was based exclusively on findings of fact.  For example, that court found that Ruiz's testimony at the criminal trial was credible and consistent with other credible evidence, and that Ruiz's statements to the FBI in 1996 were "given under circumstances that are likely to be reliable."  *Lewis II* at *3.  Petitioner challenged the court's ruling on the perjury issue as not supported by the evidence.  App. Br. at 2-3.

Because Petitioner's claim to the Appellate Court was that the habeas court's decisions on the perjury claim was not supported by the evidence, the full transcript was certainly necessary for the Appellate Court's review.  That rule is clearly established and regularly followed.  The Connecticut Supreme Court has squarely held that when an appellant claims that a trial court's decision was not supported by the evidence, the appellant is required to file a "transcript of all the evidence." *McGaffin v. Roberts*, 193 Conn. 393, 409 (1984).  "When we are presented with a claim that the court's decision is not supported by the evidence, our duty on review is to examine not only the memorandum of decision, but the entire record together with the exhibits and transcripts."  *Pleines v. Franklin Const. Co.*, 30 Conn. App. 612, 615 (1993).  "We cannot review a claim of insufficient evidence where ... we have not been offered the opportunity to review fully *all* of the evidence which was before the trial court."  *In re Lea T.*, 15 Conn. App. 455, 457 (1988).

Considering the latitude granted to *pro se* parties, it could perhaps be argued that Petitioner would have substantially complied with the rule if he had submitted evidence that was sufficient to enable the Appellate Court to rule on the perjury issue even though he failed to supply any part of the habeas trial transcript.  However, the material Petitioner submitted to the Appellate Court was not close to being sufficient.   At a minimum, that Court could not have known whether there was other evidence in the record that supported the habeas court's conclusions on the perjury issue with

the limited material available.

"While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... and have held that some procedural rules must give way because of the unique circumstances of incarceration ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

This Court concludes that its consideration of the perjury issue is barred by procedural default based on the adequate-record rule, but that its consideration of the *Brady* issue is not.

### b.    Failure to Brief

Respondent argues that Petitioner is also barred from raising these issues in the present action by failure to brief the Appellate Court properly when he sought to appeal the habeas court's ruling. Resp. Br. at 21 *et seq.* Respondent does not cite Connecticut state authority for a briefing requirement as such. Instead, Respondent argues that Petitioner failed to follow the procedures for appealing the habeas court's ruling. However, Petitioner did comply with those procedures.

In order to appeal the habeas court's decision, Petitioner was required by Connecticut General Statutes § 52-470(b) to file a petition for certification to appeal, which may be directed to the habeas court or any judge of the Supreme or Appellate Court. On September 26, 2001, he filed such a petition directed to Justice Katz of the Supreme Court. On October 22, 2001, Justice Katz denied the petition without explanation. Petitioner then filed an uncertified appeal with the Appellate Court. The remaining question is whether he complied with the procedure for filing an uncertified appeal.

An uncertified appeal may proceed only if the denial of certification constituted an abuse of discretion. *Simms v. Warden*, 230 Conn. 608, 615 (1994). The petitioner bears the burden of

-13-

proving such abuse. *Id.* at 615-16. If the petitioner makes that showing, he may demonstrate to the Appellate Court that the decision of the habeas court should be reversed on the merits. *Id.* at 612. On this basis, Respondent argues that Petitioner faced a requirement of claiming an abuse of discretion. Respondent interprets this as a requirement that Petitioner "brief" the claim of abuse of discretion to the Appellate Court, in order to preserve the issues in his appeal for this Court's review. However, assuming, without deciding, that there is such a briefing requirement, Petitioner complied with it.

Specifically, Respondent argues that Petitioner "never mentioned the denial of certification in his brief to the Appellate Court and did not even attempt to demonstrate that such denial of certification constituted an abuse of discretion." Resp. Br. at 23. In other words, Petitioner's appeal was inadequate because his brief failed to make specific reference to Justice Katz's decision denying certification. The Appellate Court seemed to adopt the same position when it stated that "the petitioner ... failed to advance any arguments challenging the propriety of Justice Katz's ruling." *Lewis III* at 598.

However, because Petitioner briefed the abuse-of-discretion issue, requiring a specific reference to Justice Katz's ruling elevates form over substance. The Connecticut Supreme Court has explained what it means to show that the denial of certification to appeal was an abuse of discretion. The question is whether the appeal is substantively frivolous. "[I]f an appeal is not frivolous, the habeas court's failure to grant certification to appeal is an abuse of discretion." *Taylor v. Comm'r of Correction*, 284 Conn. 433, 448 (2007), *quoting Copas v. Comm'r of Correction*, 234 Conn. 139, 150-51 (1995). Presumably, this would be equally true of Justice Katz's failure to grant certification.

Thus, the "abuse of discretion" decision involves considering the merits of Petitioner's

-14-

arguments on appeal. *Castonguay v. Comm'r of Correction*, 300 Conn. 649, 658 (2011). "In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." *Id., quoting Taylor* at 449. Justice Katz's ruling upheld the habeas court's ruling without explanation. If Petitioner had established that the habeas court's ruling was an abuse of discretion, he would also have established that Justice Katz's ruling was an abuse of discretion. Petitioner's failure to make a specific reference to Justice Katz's ruling is merely the failure to invoke certain "magic words" that need not be rigidly required of a *pro se* petitioner.

The question, assuming that there is a briefing requirement, is whether Petitioner briefed the Appellate Court on whether his appeal was frivolous. In determining whether an appeal is frivolous, the Connecticut courts apply criteria set forth by the United States Supreme Court for consideration of federal habeas appeals in *Lozada v. Deeds*, 498 U.S. 430, 431-32 (1991). Only one of the criteria must be met. "A habeas appeal that satisfies one of the criteria set forth in *Lozada* ... is not, however, frivolous." *Taylor* at 621, *quoting Copas* at 150-51. The *Lozada* criteria are: (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues in a different manner; and (3) that the questions are adequate to deserve encouragement to proceed further. Petitioner did argue to the Appellate Court that the *Brady* and perjury issues could be resolved in a different manner.

First, on the *Brady* issue, Petitioner discussed at some length the alleged suppression of witness Ovil Ruiz's alleged 1991 admission to a police detective that his testimony implicating Petitioner was false (App. Br. at 1-3, Reply Br. at 1-4). His "Statement of Issues" included the question "Whether the habeas court abused its discretion in ruling that former Detective Michael

-15-

Sweeney's testimony ... was not suppressed." He asserted that information regarding Sweeney's testimony "[w]as not turned over in response to defense motion for disclosure filed March 27, 1997 at the criminal trial." App. Br. at 7. In his reply brief, Petitioner specifically referenced the doctrine on disclosure of exculpatory evidence from *Brady v. Maryland* and devoted four pages to discussion of accusations that the Sweeney evidence was suppressed. Reply Br. at 1-4. Thus, Petitioner's arguments briefed the Appellate Court on the issue of whether his *Brady* claim was frivolous.

Petitioner also briefed the issue of whether the state used perjured testimony. In his "Statement of Issues" he included "Whether the habeas court abused its discretion in ruling that Detective Michael Sweeney's testimony... failed to prove evidence of Ovil Ruiz's untruthfulness in his statements." Without using the word "perjury," Petitioner provided a number of examples of Ruiz's allegedly perjured testimony. Reply Br. at 4-5. Petitioner did not cite the *Lozada* criteria. But his arguments clearly were designed to show that his appeal on the perjury issue was not frivolous.

Petitioner thus did brief the Appellate Court on the issue of whether the denial of certification was an abuse of discretion. Respondent does not argue that the requirement at issue is a requirement of *adequate* or *persuasive* briefing, rather than merely a requirement of briefing. Resp. Br. at 21-24. Thus, "failure to brief" is not an adequate ground for denying consideration of the *Brady* and perjury issues.

## III.    Conclusion

For the foregoing reasons, the Court holds that it is procedurally barred from considering Petitioner Lewis's second federal habeas claim, his perjury claim. The Court holds that it is *not*

procedurally barred from considering Petitioner's first claim, his *Brady* claim.

It follows that this Court will conduct an evidentiary hearing with respect to the *Brady* claim and Petitioner's third claim, which is the third-party confession claim.   A date and time for the hearing will be set in a subsequent Order.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 23, 2012

                                       *Charles S. Haight, Jr.*
                                       Charles S. Haight, Jr.
                                       Senior United States District Judge